IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| HENRY PORTERFIELD, | * |
| Plaintiff | * |
| v. | * |
| | * |
| FLOWERS BAKING COMPANY OF | *   Case No. 2:05-cv-937-F |
| OPELIKA, LLC, GRADY MESSER, | * |
| CALVIN RHODES, STEVE BORDEAU, | * |
| Defendants. | * |

**PLAINTIFF'S RESPONSE BRIEF TO DEFENDANT'S OPPOSITION TO MOTION TO AMEND AND MOTION TO JOIN ADDITIONAL DEFENDANTS**

COMES NOW Plaintiff, by and through counsel, and submits its Brief in response to Defendant Flowers Baking Company of Opelika, LLC's brief in opposition to Motion To Amend and Motion To Join as follows:

I.   **Procedural History:**

On August 23, 2005, Plaintiff Henry Porterfield, through counsel, filed a complaint against Alabama domestic limited liability corporation Defendant Flowers Baking Company of Opelika, LLC (hereafter referred to as "Flowers" and/or "Defendant Flowers") in Montgomery County, Alabama Circuit Court. In that multi-count complaint alleging breach of contract, fraud, misrepresentation, negligence, wantonness, conversion, and more specifically Defendant Flower's wrongful conduct in removing Plaintiff from his exclusive delivery route territory in 2005, pursuant to actions surrounding a July 3, 2000 contract Plaintiff had executed with Defendant Flowers. Plaintiff further named, as additional defendants in his original complaint, "Fictitious Defendants 'H' through 'M,'" being identified as "...those persons, firms, corporations, or other business entities responsible for the acts alleged herein." [Exhibit "A,"

paragraph 4, attached hereto].

On October 3, 2005, Defendant Flowers removed this Montgomery County Circuit Court case to this Court. On November 3, 2005, Plaintiff filed three motions: a Motion To Amend, a Motion to Join, and a Motion to Remand. Defendant Flowers subsequently filed its brief in opposition to these motions. For the following reasons set forth herein, this Court should grant said motions and remand this case to its place of origin, the Montgomery County District Court.

## II.     Argument In Support Of Motion To Amend and Motion To Join

### A.     Plaintiff Should be Permitted to Amend His Complaint to Add Individual Defendants as Evidence of Those Defendant's Actions Has Only Recently Been Discovered by Plaintiff.

Defendant Flowers' argument against joinder and amendment to add parties is predicated primarily upon the assertion that Plaintiff had possession of his 2002 Distributor's Agreement when he filed his complaint, and thus knew which individuals to name individually when this suit was initially filed. As will be seen by this Court, this assertion is demonstrably false.

This Defendant Flowers, from the moment it was served with this Montgomery County, Alabama Circuit Court complaint, was placed on notice, by the language of the complaint received, that further **"persons...responsible for the acts alleged herein"** would be added to this complaint. [Exhibit "A," paragraph 4, emphasis added]. Defendant also knew that the individuals to be later added would be Alabama non-diverse citizens as its officers and employees–Alabama citizens– were the individuals who had been in contact with Plaintiff during the duration of his contract,. Moreover, contemporaneous with the filing of this complaint in Montgomery County Circuit Court, Plaintiff served a Request For Production wherein Defendant Flowers was requested to "Produce any and all Distributor's Agreements entered into between

2

Defendant and Plaintiff." [Exhibit "B," page 2, paragraph 2]. Plaintiff filed this discovery request because, at the time of the filing of his complaint, he was in possession of only his outdated 2000 Distributor's Agreement with Defendant Flowers.[1] Plaintiff filed this request, therefore, to obtain a copy of the latest Distributor's Agreement in order to conclusively determine precisely who–which individual–executed his latest Distributor's Agreement with him, so that this individual might be later added to his complaint.

Defendant, knowing Plaintiff has no copy of his latest Distributor's Agreement, has, at worst, engaged in a deliberate and artful prevarication to mislead this Court into believing that Plaintiff quoted from a 2002 Distributor's Agreement while Plaintiff simultaneously alleged he had no copy of it and thus could not definitively know who signed it on behalf of Defendant Flowers. Defendant Flowers further misrepresents to this Court that Plaintiff quoted from his 2002 Distributor's Agreement in his complaint. These assertions are patently false.

**Plaintiff, in his complaint, quoted from his July 3, 2000 Distributor's Agreement–the same one referenced in his complaint–not from any 2002 Distributor's Agreement, a copy of which he did not possess until supplied to Plaintiff by counsel for Defendant Flowers after this case was removed.** Plaintiff's 2000 Distributor's Agreement is attached hereto as Exhibit "C," and this Court will note, from examining it with specific attention directed to paragraphs 11.1, 11.2, and 11.3, that it contains the precise language quoted in paragraph fourteen (14) of Plaintiff's complaint. Moreover, Defendant's unfounded and

---

[1] Paragraph 5 of Plaintiff's complaint, attached hereto as "Exhibit A," states "**On or about July 3, 2000**, Plaintiff and Defendant entered into a Distributor's Agreement..."[emphasis added]. Plaintiff was not in possession of his latest contract and thus quoted from his outdated year 2000 contract, which was subsequently renewed on a later date.

presumptuously false assertions are further belied by the very fact that Plaintiff identified the date of the Agreement as July 3, 2000 in his complaint. There was obviously no reason for Plaintiff to cite his old, outdated 2000 Distributor's Agreement if he were in possession of his 2002 Distributor's Agreement as Defendant deceitfully maintains. Unless this Court is willing to believe Plaintiff planned ab initio to quote, in his complaint, from his expired contract, presciently knowing two months in advance Defendant would remove his complaint to federal court and later allege he was quoting from his current contract when he sought to add the parties that directly and personally wronged him, then the poverty of this baseless assertion of this Defendant is conclusively proven.

      Defendant Flowers next attempts to mislead this Court into believing this canard by quoting from 2005 letter (attached hereto as Exhibit "D"), authored by Plaintiff, referencing the "March 11, 2002" Distribution Agreement. Defendant disingenuously implies that Plaintiff had a copy of this March 11, 2002 contract because he allegedly quotes from it in this letter. This assertion is again a provable falsehood. What Defendant cleverly refrained from submitting was its own letter of March 17, 2005 which first referenced and identified to Plaintiff the date of the March 11, 2002 Distributor's Agreement. This letter is attached hereto as Exhibit "E," and this Court may note that it specifically refers to the March 11, 2002 Distributor's Agreement by that date. This was how Plaintiff rediscovered the specific date of the 2002 Distributor's Agreement, and he used that date to refer to the contract when replying to the letter on March 21, 2005 (not March 19, 2005 as asserted by Defendant). The language of "fresh product," quoted from the letter, does not actually appear in the Distributor's Agreement, but Plaintiff was familiar enough with the document to know this language was substantially the same in context as the July 3,

4

2000 Distributor's Agreement in his possession and from which expired document he derived the language noted in that letter. [See affidavit of Plaintiff Henry Porterfield, attached hereto as Exhibit "F"].

Having dispensed with the confusion created by Defendant's misleading assertions, the question before this Court is whether parties, unknown to Plaintiff at the time of the filing of his lawsuit, and who individually harmed Plaintiff, may be added by amendment and/or joined to his complaint. Whether Grady Messer, who acted to harm Plaintiff, and Calvin Rhodes, who signed the 2002 Distributor's Agreement that Plaintiff maintains was breached, may be joined to this case is the seminal question before this Court. Due to the recently discovered actions by both, Plaintiff should be permitted to add these defendants by amendment.

Unless Defendant can show that "either . . . there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or . . . there has been outright fraud in the plaintiff's pleading of jurisdictional facts," then this Court must allow this suit to proceed against the non-diverse party ... and remand this cause back to state court. _Cobb v. Delta Exports, Inc._, 186 F.3d 675 (5th Cir. 1999), citing _Jernigan v. Ashland Oil, Inc._, 989 F.2d 812, 815 (5th Cir. 1993) (citing _B., Inc. v. Miller Brewing Co._, 663 F.2d 545, 554 (Former 5th Cir. Dec. 1981)). This is because joinder of a non-diverse party, after removal, "...destroys diversity jurisdiction." _Id._ The Supreme Court, in addressing removal in _Freeport-McMoRan, Inc. v. KN Energy, Inc._, 498 U.S. 426 (1991) (per curiam), allowed a federal district court to retain jurisdiction under limited circumstances involving post-removal joinder, such as when substituting parties pursuant to Rule 25, F.R.C.P.; however, the High Court

5

does not allow that jurisdiction to stand when non-diverse parties are joined post-removal.

> "The implication is that, had the addition occurred pursuant to rule 19, § 1447(e) would have required a remand. Burka's reasoning, then, supports the view that Freeport-McMoRan is limited to rule 25 substitutions and that post-removal joinders, whether dispensable or indispensable, are controlled by § 1447(e)." *Cobb* at 676.

And as previously noted, joinder of non-diverse parties, pursuant to the dictates of Section 1447, requires remand to state court.[2]

Therefore, applying the law to the facts in this case, the question to be decided by this Court is whether Defendant has shown that Plaintiff has **"...no possibility..."** of being able to show he can "...establish a cause of action against the in-state defendant [Grady Messer or Calvin Rhodes] in state court. *Cobb, supra*. A fair review of the facts and allegations in this case clearly show Plaintiff can easily establish a cause of action against Grady Messer.

Plaintiff Porterfield operated or serviced, as an independent contractor, a delivery route for Defendant Flowers, and by contract worked this route in an exclusive territory that he periodically purchased from Defendant Flowers. For years, as alleged in his complaint, Plaintiff

6

---

[2] *See Ingram v. CSX Trans.*, 146 F.2d 858 (11th Cir. 1998) ("Thus, in determining whether to grant Ingram's motion, the district court should have considered 28 U.S.C.A. Section 1447 (e), which provides: 'If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court. **The district court had no discretion to add the City [a non-diverse party] as a defendant, retain jurisdiction and decide the case on the merits.**"[emphasis added].

delivered baked goods (bread and other bakery products) to stores and businesses within his territory. Immediately prior to the termination of his contract and delivery route with Defendant Flowers, Publix and WalMart initiated construction of new grocery stores in Plaintiff Porterfield's exclusive territory, and these new stores, once operational, would greatly increase the value of Plaintiff Porterfield's exclusive territory as they would purchase large amounts of baked products from Plaintiff.

In his affidavit, attached hereto as Exhibit "F," Plaintiff Porterfield states that he suspected Defendant Messer was using Plaintiff's loss of a delivery contract with Troy State University as a pretext for terminating his employment and regaining Plaintiff's delivery route. He suspected that Messer wanted to deprive Plaintiff of his route because, with the addition of new grocery stores on the route, the delivery route would be far more lucrative to the company if it could operate the route as a company route or resell the route to another independent contractor at a significantly higher price than that previously paid for it by Plaintiff. He further suspected Messer terminated his contract and usurped his delivery route as retaliation for Plaintiff's complaints regarding being supplied with stale product for his route customers. He suspected all this activity on the part of Defendant Messer, but he needed direct proof, which he was lacking at the time he filed his complaint. He therefore alleged fictitious parties, intending to add those

7

directly responsible for this tortious conduct once identified during the discovery process in the Circuit Court of Montgomery, Alabama, and his attorneys filed with the complaint motions for production to obtain said discovery. [See affidavit of Plaintiff Porterfield, attached hereto as Exhibit "F"].

In September of this year, after being informed by his attorneys that there were time restrictions against adding parties to a lawsuit, he began contacting other route operators. He subsequently contacted Doug Branch and Charles Morrow, and in October discovered that these individuals, also independent contractors with Defendant Flowers, had personal knowledge of facts supporting his suspicions against defendant Messer. Those affidavits, attached hereto as Exhibits "G" and "H," directly implicate Defendant Messer in the allegations and torts alleged in Plaintiff's complaint, and the information these affidavits contain was unknown to Plaintiff at the time he filed his complaint. Fear of corporate retaliation prevented Morrow from previously reporting to Plaintiff the information contained in his affidavit.

Plaintiff's affidavit, previously identified as "Exhibit "F," establishes that Defendant Messer personally worked to deprive him of his property and income and convert his delivery route so that it might be resold to the benefit of Defendant Flowers. His affidavit establishes that Defendant Messer, especially when considered in conjunction with the previously

undiscovered evidence within the Branch affidavit, purposefully singled Plaintiff out, subjected him to disparate treatment in comparison to others similarly situated with Defendant Flowers, and presents compelling evidence of Defendant Flower's use of Plaintiff's loss of the small Troy State account as a pretext for terminating him. His affidavit establishes that Defendant Messer personally undertook punitive action against Plaintiff in retaliation for Plaintiff's complaints regarding Defendant Flower's violation of its own contractual obligations requiring the furnishing of "fresh baked goods."

    Defendant Flowers would have this Court believe that an agent cannot be responsible for torts he–the agent–personally commits when he acts for his principal or employer. This argument is specious. As specifically set forth in Plaintiff Porterfield's complaint and/or affidavit, Defendant Messer personally created the situation, facts and allegations that resulted in the termination of Plaintiff's contract. He provided the reason for the termination of Plaintiff. He directly committed the torts Plaintiff alleges in his complaint. Thus, this action is clearly proper against Defendant Messer. It is well-settled law that an agent who misrepresents facts to a party subsequently injured thereby, the agent is personally liable:

> "It is fundamental that all persons are under a duty not to fraudulently misrepresent material facts to persons with whom they have business dealings. The Restatement of Torts, Section 525, states:

"'One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or refrain from action in reliance thereon in a business transaction is liable to the other for the harm caused to him by his justifiable reliance upon the misrepresentation.'"

*Ringer v. First National Bank of Stevenson*, 291 Ala. 364, 370 (Ala. 1973). Moreover, and conclusively on this subject, "an agent is liable for his torts whether his principal is liable or not." *Birmingham Terminal Co. v. Wilson*, 249 Ala. 397 (Ala. 1947). That law has not changed. Thus, regardless of Defendant Flower's ratifying of or condonation of the conduct of Defendant Messer, he is still personally responsible for his individual tortious actions in an Alabama state court of law.

The case of *Brown v. TransSouth Fin. Corp.*, 387 F. Supp. 1398 (M.D. Ala 1995) affords excellent guidance in resolving this issue. In that case, as here, Plaintiff alleged fictitious parties in general terms in a complaint filed in Barbour County.[3] Plaintiff Brown subsequently, following removal to this Federal Court, added the party Karen White as a

10

---

[3] In *Brown*, the fictitious parties were described as "those persons who or which were employed by Defendant TranSouth Financial Corporation and/or Defendant Associates Financial Life Insurance Company on the dates complained of herein and who or which made the misrepresentations to Plaintiff as described in this complaint." *Brown* at 1398. Herein, the fictitious parties are described as "those persons, firms, corporations, or other business entities responsible for the acts alleged herein." [Exhibit "A"]

defendant, whose citizenship destroyed diversity, and moved this Court for remand. Moreover, in the *Brown* case, Karen White's name appeared on the underlying loan agreement forming the basis of the complaint and this fact was known to Plaintiff Brown, whereas here, as shown by Plaintiff's foregoing exhibits, Plaintiff Porterfield did not possess a copy of the 2002 document containing the signature of Defendant Messer and Rhodes.

Deciding that Plaintiff Brown "proceeded 'in a reasonably diligent manner in determining the true identity of the fictitious defendant,'" Judge DeMent noted that "the plaintiffs submitted interrogatories simultaneously with their complaints which sought to elicit the proper names of all fictitious parties." *Id.* Herein, as noted above, Plaintiff sought discovery of documents that would accomplish the same by requesting all contracts and distributorship agreements that would disclose the identity of the individual who specifically executed the 2002 Distributor's Agreement with Plaintiff Porterfield. Moreover, as noted in the Morrow affidavit, independent contractors were reluctant to tell Plaintiff of information incriminating Defendant Flowers for fear of retaliation.

In the *Brown* case, noting that "...removal statutes are strictly construed against removal..." and that "...all doubts about removal should be resolved in favor of

11

remand,"[4] Judge Dement remanded the case back to state court even though the motion to amend the Plaintiff's complaint was filed forty-two (42) days after notice of removal, whereas in the immediate case, the motion to amend Plaintiff's complaint was filed thirty-one (31) days after notice of removal.

> B.     Defendant Flowers cannot meet its burden of proving fraudulent joinder.

Defendant Flowers, in opposing Plaintiff's Motion to remand and Motion to Amend, alleges fraudulent joinder. Thus, according to this Court's mandate as expressed by Chief Judge Albritton, Defendant has the burden of proof and must meet an evidentiary standard of clear and convincing evidence, and all evidence must be viewed in a light most favorable to Plaintiff.

> "The burden of proving fraudulent joinder rests with the defendant as the removing party. See *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). A claim of fraudulent joinder must be supported by clear and convincing evidence. *See Parks v. New York Times Co.*, 308 F2d 474, 478 (5th Cir. 1962), *cert. denied*, 376 U.S. 949 (1964); *see also Bolling*, 900 F. Supp. At 406. In evaluating whether there has been fraudulent joinder, all allegations and submissions must be viewed in the light most favorable to the plaintiff...In fact, 'the district court should resolve all questions of fact and controlling law in favor of plaintiff.' *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989).

---

[4] Citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941), *Butler v. Polk*, 592 F.2d 1293 (5th Cir. 1979), and *Paxton v. Weaver*, 553 F.2d 936 (5th Cir. 1977). See also *Burns v. Windsor Ins. Co.*, 31 F.3d at 1095.

*Clingan v. Celtic Life Ins. Co.*, 244 F. Supp.2d 1298, 1299 (M. D. Ala. 2003).

This Court, in accord with its 2003 *Clingan* decision, must review three factors in deciding the issue of fraudulent joinder.

> "...the removing party must show either (1) that there is **no possibility** the plaintiff could establish a cause of action against the resident defendant in a state court, (2) that the plaintiff fraudulently pleaded jurisdictional facts, or, (3) that a diverse defendant is joined with a nondiverse defendant as to whom there is no joint several or alternative liability and the claim has **no real connection** to the claim against the nondiverse defendant...**If the removing party fails in an attempt to demonstrate the existence of a fraudulently joined party, then the case must be remanded to state court.**"

*Id.* [emphasis added]. Herein, Defendant Flowers cannot meet this burden. Clearly, if the individual parties, named in Plaintiff's Motion to Amend and Motion to Join, are culpable for any of the specific underlying acts alleged (conversion, fraud, misrepresentation, negligence or wantonness), then a cause of action may be alleged against that offending individual in state court. Plaintiff has presented evidence of Defendant Messer being clearly and directly implicated in the counts of fraud, misrepresentation, conversion, negligence and wantonness contained within Plaintiff's complaint. Defendant Rhodes and Bordeau executed the contract signed by Plaintiff and thus are parties to the fraud, conversion, and negligence committed against him. Thus, Defendant Flowers cannot prevail on the first criteria.

As to the second and third criteria, there is no showing that Plaintiff "fraudulently plead" jurisdictional facts in state court. As noted in Exhibit "F," Defendant Flowers is an Alabama corporation licensed to conduct business in Alabama and its corporate documents

are filed with the Alabama Secretary of State as a domestic corporation; its principal place of business is the State of Alabama with numerous delivery routes throughout the state; its officers reside in Alabama; and it employs Alabama citizens. Clearly Alabama has the right to exercise jurisdiction over this corporation and Plaintiff was well within his rights to allege the Circuit Court of Alabama as the proper jurisdiction for a lawsuit against Defendant Flowers.[5] The third criteria is easily decided in Plaintiff's favor as all allegations against the individual defendants arise from the same facts and circumstances as those against Defendant corporation. In sum, Defendant Flowers cannot meet any burden of proving a fraudulent joinder herein.

## Conclusion

Plaintiff discovered, after the filing of this complaint, evidence that directly implicates officers and employees of Defendant Flowers. Plaintiff is therefore entitled to join them to this action and amend his complaint to add these individuals as defendants. Disallowing joinder of these individual defendants would force Plaintiff to file suit against them in Montgomery County Circuit Court , and would thus create two separate lawsuits–one in state court against the officers and employees of Defendant corporation and one in federal court against the Defendant corporation itself–arising from the same facts and occurrences involving the same parties. Such a duplicity of litigation would not be in the best interests of either party, would create a substantial burden on this Plaintiff suing as an individual against

---

[5] The fact that Defendant Flowers availed itself of removal to federal court in no way undermines the fact that the Alabama Circuit Court had jurisdiction over Defendant, and would have legally retained jurisdiction over Defendant Flowers had Defendant Flowers not sought removal.

a large corporation, and would not be in the interests of judicial economy. Defendant Flowers has not met its burden of proving fraudulent joinder; thus the Motion to Amend and Motion to Join should be granted, and this case should be remanded to Montgomery County Circuit Court.

Respectfully submitted this the 29th day of November, 2005.

Dan W. Taliaferro
Gregory L. Davis
Attorneys for Plaintiff

Greg L. Davis, Esq
Dan W. Taliaferro, Esq.
6987 Halcyon Park Drive
Montgomery, AL 36117

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I have served a copy of the foregoing document by U. S. Mail, first class postage prepaid and properly addressed, on the 29th day of November, to the following:

Sandra B. Reiss, Esq.
OGLETREE, DEAKINS, NASH SMOAK & STEWART
One Federal Place, Suite 1000
1819 Fifth Avenue North
Birmingham, AL 35203-2118

Dan W. Taliaferro