# EXHIBIT F



IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| HENRY PORTERFIELD, | * | |
|     Plaintiff | * | |
| v. | * | |
| | * | |
| FLOWERS BAKING COMPANY OF | * | Case No. 2:05-cv-937-F |
| OPELIKA, LLC, GRADY MESSER, | * | |
| CALVIN RHODES, STEVE BORDEAU, | * | |
|     Defendants. | * | |

## AFFIDAVIT OF HENRY PORTERFIELD

**STATE OF ALABAMA**

**MONTGOMERY COUNTY**

BEFORE ME, the undersigned authority, personally appeared Henry Porterfield, who being first duly sworn did depose and state under oath as follows:

1. "My name is Henry Porterfield. I am a resident, citizen of Montgomery County, Alabama and I am over the age of nineteen years. I am the Plaintiff in this case."

2. "I have read documents submitted in this case by the attorneys for Flowers Baking Company of Opelika, LLC. Some of the statements in these documents are factually incorrect."

3. "I do not have a copy of any Distributorship Agreement I signed with Flowers that is dated March 11, 2002. If I had a copy at one time, I long since lost it. From viewing the copy provided by Flower's attorneys since this case was filed, I know it has been over three years since I signed it. If I had a copy of it, I misplaced it a long time ago, and I did not have a copy of it when I wrote to Flowers in March of 2005 or when my attorneys filed this lawsuit in August of 2005. I do, however, have a copy of my July 3, 2000

Distributor's Agreement, and I gave my attorneys a copy of that document before this case was filed in August. That is the copy they quoted from in my complaint."

4.    "Before I wrote to Flowers on March 21, 2005, Michael Lord, the Vice President of Sales, had written to me on March 17, 2005. In his letter to me he referenced the Distributor's Agreement 'dated March 11, 2002.' As I recall, that is where I obtained the specific date of the Distributor's Agreement when I wrote back to him on March 21, 2003. I had to get the date from that letter from Lord or from some other letter because I could not locate any copy of my 2002 Distributor's Agreement."

5.    "When Flowers states that I quoted from my 2002 Distributor's Agreement in my March 21, 2005 letter to Michael Lord, it is not being truthful. In that letter to Lord, I paraphrased language from the 2000 document in my possession. I assumed the later 2002 Distributor's Agreement would be substantially the same as the 2000 one I had."

6.    "Because I did not have the current 2002 Distributor's Agreement in my possession to review when I turned over my documents to my attorneys, I could not tell them, with certainty, who signed the 2002 Distributor's Agreement, so I did not know precisely whose name was on it. It was signed three years before this lawsuit, and my attorneys had told me not to speculate. I continued to look for it but have not been able to find it."

7.    "I had spoken to other independent contractors working for Flowers before this suit was filed to see if they had experienced harassment from Flowers like I had suffered. I asked them what they know about Grady Messer and his feelings or hostility towards me. I did this casually because I did not want to scare them into thinking they might be involved in a lawsuit against Flowers. I felt Messer and others with Flowers had harassed me and terminated me because they wanted to get my route back. Everyone knew that my route

was going to be much more valuable because new Publix and WalMart stores were being built in my territory. I wanted to sue Grady Messer and others with Flowers, but I needed proof Messer or others was the person or persons who was behind my wrongful termination and theft of my route. I knew I could not just speculate or guess in a lawsuit."

8.    "After the lawsuit was filed, I contacted other independent contractors. Sometime late in September or early October of 2005, I spoke with Doug Branch, Charles Morrow and other contractors. They really did not want to get involved and were concerned about Flowers retaliating against them if they helped me. One of them had his contract and knew it was signed by Calvin Rhodes and Steve Bordeau, so I was certain mine was signed by them also. Branch said he believed Messer and others were trying to run me off and take my route back, and Morrow said he knew they were but he said he was reluctant to get involved. He finally told me later what is in his affidavit–that Messer had basically invented a reason to run me off to take my route back."

9.    "In running my delivery route, I had accounts with many stores and businesses and delivered bakery products to them. One of those businesses was a small account at Troy State University. The lady I dealt with on that account had a misunderstanding with me and did not allow me to deliver products there. Flowers, by Grady Messer, sent me a letter telling me I had 10 days to "cure" this breach of my contract. He then made it impossible for me to cure the breach. I got the lady at Troy State to begin accepting some products from me again, which would have cured this breach, but Messer banned my truck from the warehouse and would not let me arrange for someone else to run my route. He then had the company run it and charged me so much to do it that my route lost money. Then he terminated me for not curing the breach he would not let me cure. I

believed he did this because of the money Flowers could make by reselling my route for more money once the new Publix and WalMart stores opened on it. I knew he was also angry with me for complaining about the out of code product Flowers was giving me. Flowers was freezing bread, storing it for weeks or months, and then thawing it out and acting like it was fresh. I told Messer and others I was sick of this and wanted it to stop because it was dishonest and it might cost me business."

10.     "I did not get proof of my suspicions and thoughts until recently. When I got the information from Charles Morrow, I immediately told my attorneys. This was during the first few days of November. Before my conversations with these two men, I did not have anyone to back up my beliefs about what Messer and the others were doing to me. My lawyers had told me I needed proof, and so I kept asking around and talking about what Flowers had done to me. I certainly did not have this information from Branch and Morrow when my lawsuit was filed, and I did not have a copy of the 2002 Distributor's Agreement until after the lawsuit was filed."

11.     "I knew my lawyers were going to add the names of the people who beat me out of my route and stole it from me once we got proof of it. That's why they sued people with initials so that the names could be added later when I could find people who knew what they did wrong."

12.     "I know Flowers Baking Company of Opelika, LLC is an Alabama corporation on file with the Secretary of State as being an Alabama corporation. I know Messer lives in Alabama, and so does Rhodes and Bordeau, who signed my contract. Almost all the independent contractors making deliveries for Flowers live in Alabama. Every customer I know of is located in Alabama so it does practically all of its business in Alabama."

13.    "This affidavit is based upon my own personal knowledge and is true and correct to the

best of my knowledge."

_Henry Porterfield_
Henry Porterfield

SWORN TO AND SUBSCRIBED BEFORE ME this the 29th day of November, 2005.

_Ceva N Ale_
Notary Public
My commission expires: 08/10/09

_Dan W. Taliaferro_
Dan W. Taliaferro
Counsel for Plaintiff Henry Porterfield

Dan W. Taliaferro,
Attorney at Law
6987 Halcyon Park Drive
Montgomery, Alabama 36117
(334) 409-0545
(334) 409-7001 fax