UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| HENRY G. PORTERFIELD | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **CASE NO: 2:05-cv-937-F** |
| | ) | |
| | ) | |
| FLOWERS BAKING CO. OF | ) | |
| OPELIKA, LLC. | ) | |

DEFENDANT'S SURREPLY BRIEF IN OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND AND PLAINTIFF'S
MOTION TO JOIN AND MOTION TO AMEND COMPLAINT[1]

COMES NOW Defendant Flowers Baking Company of Opelika, LLC (hereinafter

"Flowers" or "Defendant") by and through its undersigned counsel, and submits its Reply Brief

in Opposition to Plaintiff's Motion to Remand and Motion to Join and Motion to Amend

Complaint as follows:

**I.  Plaintiff Cannot Overcome the *Hengens* Factors in Seeking to Join Grady Messer
and Calvin Rhodes**

**A.  Plaintiff's Affidavit Demonstrates That He Was Aware of the Identity of
Individuals Whom He Believed Engaged in Wrongful Conduct <u>Before</u> He
Filed His Complaint**

A review of Plaintiff's Affidavit, Exhibit F to his Response Brief, demonstrates that

Plaintiff was clearly aware of the identity of the person(s) he believed to have wronged him

before he filed his Complaint, and thus could have originally named these persons as defendants

when he originally filed his Complaint. Specifically, paragraphs 7 and 9 of Plaintiff's Affidavit

---

[1] Because many of Plaintiff's arguments in his response briefs to his Motion to Remand and
Motion to Amend and Motion to Join overlap or are duplicative, it is simply easier, and a matter
of judicial economy, to respond to the same in one reply brief.

outline his suspicions about why his contract was terminated and who allegedly "engineered" the termination of his contract. It is also obvious that Plaintiff possessed this knowledge **before he filed the Complaint; it was not information he garnered from anyone else**. In paragraph 7, Plaintiff states, "I felt that Messer and others with Flowers had harassed me and terminated me because they wanted to get my route back. Everyone knew that my route was going to be much more valuable because new Publix and Wal-Mart stores were being built in my territory." In Paragraph 9 Plaintiff states,

> In running my delivery route, I had accounts with many stores and businesses and delivered bakery product to them. One of those businesses was a small account at Troy State University. The lady I dealt with on that account had a misunderstanding with me and did not allow me to deliver products there. Flowers, by Grady Messer, sent me a letter telling me I had 10 days to "cure" this breach of my contract. He then made it impossible for me to cure the breach. I got the lady at Troy State to begin accepting some products from me again, which would have cured this breach, but Messer banned my truck from the warehouse and would not let me arrange for someone else to run my route. He then had the company run it and charged me so much to do it that my route lost money. Then he terminated me for not curing the breach he would not let me cure. I believed he did this because of the money Flowers could make by reselling my route for more money once the new Publix and Wal-mart stores opened on it. I knew he was also angry with me for complaining about the out of code product Flowers was giving me. . . . I told Messer and others I was sick of this and wanted it to stop because it was dishonest and might cost me business.

These comments alone demonstrate that Plaintiff was unambiguously aware of the identity of those persons he believed to have wronged him before he filed his Complaint. Moreover, the fact that these comments were made **only after the filing of Defendant's Opposition briefs** lends further credence to the fact that Mr. Messer is not a necessary party. In addition, Plaintiff admits he was aware of Mr. Messer's alleged involvement before he filed his Complaint by stating in his Response Brief:

> Plaintiff's affidavit, previously identified as "Exhibit F" to Plaintiff's Response Brief, establishes that Defendant Messer personally worked to deprive him of his property and income and convert his delivery route so that it might be resold to the benefit of Defendant Flowers. . . As specifically set forth in **Plaintiff**

> **Porterfield's complaint and/or affidavit**, Defendant Messer personally created the situation, facts and allegations that resulted in the termination of Plaintiff's contract.  He provided the reason for the termination of Plaintiff.  He directly committed the torts Plaintiff alleges in his complaint.   Thus, this action is clearly proper against Defendant Messer.

(Plaintiff's Response, pp. 8-9) (emphasis added).   In addition, Plaintiff completely fails to address the fact that he received letters from Mr. Messer addressing his breach of contract and leading up to the termination of his contract and thus, would have known that Mr. Messer was influential in the decision to end his contract with Defendant. (See Defendant's Response in Opposition to the Motion to Join and Motion to Amend, p. 4)   *See also,  Jerido v. American Gen. Life & Accidental Ins. Co.*, 127 F.Supp.2d 1322,  1324 (M.D. Ala. 2001) ("[T]he timing of the amendment, coming simultaneously with the Motion to Remand and after removal, also lends support to the finding that the primary purpose of the amendment is to defeat federal jurisdiction."); *Id.* at 1325 (no explanation as to why plaintiff waited almost two months to name an individual defendant; thus, plaintiff was dilatory) *Bevels v. American States Ins. Co.*, 100 F.Supp. 2d 1309,1313 (M.D. Ala. 2000) (post-removal amendment to the Complaint indicates that the purpose of the amendment is to defeat federal jurisdiction where there was no apparent reason for the plaintiffs to wait to add individual defendant until after case was removed, indicating that plaintiffs were dilatory)[2]; *In re Norplant Contraceptive Prods. Liab. Litig.,*  898 F.Supp. 428 (E.D. Tex. 1995) (denying motion to amend where plaintiff knew the identity of defendant at an earlier time.)

---

[2]It is also notable that Plaintiff's recent allegations against Mr. Messer were **only made following** Defendant's response to Plaintiff's Motions to Remand, Amend and Join and were not made in the original pleadings. This further confirms his sole motive in attempting to add Mr. Messer is to destroy diversity.

**B. Plaintiff's Attempt to Apply a Fraudulent Joinder Analysis and Burden of Proof is Wholly Erroneous as the Hensgens Case Presents the Proper Standard**

Plaintiff seeks to avoid the aforementioned controlling case law by arguing that authority addressing fraudulent joinder is applicable. (Plaintiff's Opposition pp. 6-7) The "no possibility" legal standard is applicable **only** in cases where defendants are improperly joined **at the inception of a lawsuit, pre-removal**.[3] This standard is **not** applicable to cases like the instant one where a plaintiff seeks to add a defendant or defendants post-removal.[4] In removal cases, this Court has repeatedly followed the *Hensgens* analysis, and also emphasized that in balancing the *Hensgens* factors, the parties do not start out on an equal footing. As explained by the Court in *Bevels* court:

> In balancing the equities, the parties do not start out on equal footing. *Sexton v. G&K Services, Inc.*, 51 F.Supp.2d 1311, 1313 (M.D.Ala. 1999). This is because of the diverse defendant's right to choose between a state or federal forum. Giving diverse defendants the option of choosing the federal forum is the very purpose of having the removal statutes. *Hensgens*, 833 F.2d at 1181. Just as plaintiffs have the right to choose to sue in state court when complete diversity does not exist, non-resident defendants have the right to remove to federal court when there is diversity.

100 F.Supp.2d at 1313. Flowers had the right to remove this case initially and, based on the controlling *Hensgens* factors, Plaintiff should not now belatedly be allowed to add individual defendants to defeat diversity.

---

[3] *Clingan v. Celtic Life Insurance Co.*, 244 F.Supp.2d 1298, 1299 (M.D. Ala. 2003), a case discussed extensively by Plaintiff, is an example of such a case.

[4] In fact, one of the cases cited by Plaintiff, *Cobb v. Delta Exports, Inc.*, 186 F.3d 675, 676-77 (5th Cir. 1999), specifically discusses this distinction. ("The fraudulent joinder doctrine does not apply to joinders that occur **after** an action is removed. This court's case law reflects that the doctrine has permitted courts to ignore (for jurisdictional purposes) only those non-diverse parties **on the record in state court at the time of removal**.") (emphasis in original)

4

### C. The Affidavits of Doug Branch and Charles Morrow Do Not Provide New or Additional Information that Plaintiff Needed to Name Grady Messer in His Original Complaint

A review of the Affidavits of Mr. Branch and Mr. Morrow (Exhibits G and H to Plaintiff's Response) do not add material information that Plaintiff did not already possess at the time he filed his Complaint. The majority of Mr. Branch's affidavit consists of opinion testimony and assumptions which is not the first-hand, personal knowledge required by the Federal Rules of Civil Procedure. Mr. Morrow also presents opinion testimony and reiterates much of what Plaintiff already stated in his affidavit. Neither third-party affidavit adds critical information that Plaintiff did not possess about Mr. Messer at the time he filed his Complaint.

### D. Plaintiff Does Not Allege Any Wrongdoing by Calvin Rhodes and Thus Plaintiff Will Not Be Injured if He is not Joined to the Complaint

Importantly, the only reference to Mr. Calvin Rhodes in Plaintiff's Affidavit is the fact that he was a signatory to the last contract; Plaintiff does not allege any wrongdoing by Mr. Rhodes, nor does he address the fact that Mr. Rhodes retired in January 2005, months before plaintiff's contract was terminated. The affidavits submitted by Mr. Branch and Mr. Morrow do not even mention Mr. Rhodes. As such, Mr. Rhodes is not a necessary party and Plaintiff will not be injured if Mr. Rhodes is not joined as a Defendant. Most importantly, it is now very obvious that Mr. Rhodes was only named in the Motion to Amend and Motion to Join as an attempt to destroy diversity.

### E. Plaintiff's Allegation that He did Not Possess his 2002 Contract with Defendant Does Not Excuse His Failure to Name Individual Defendants at the Time He Filed his Original Complaint

Plaintiff strongly protests that he was not in possession of 2002 Contract with Defendant and thus did not have the information necessary to name Mr. Messer and Mr. Rhodes as

individual Defendants when he filed his Complaint. This argument is a red herring at best. First, Plaintiff does not dispute that Mr. Messer is not named in the 2002 contract, and thus, the contract was not necessary or helpful in explaining why Mr. Messer was **sought to be joined only after removal.** Second, Mr. Rhodes, the former President of Defendant, is only a signatory to the contract and is not a party thereto and thus, the disclosure of his name is similarly unessential. As stated by this District in *Jerido*, *supra*, "[I]n addition, the individual defendant would not be considered to be an indispensable party since the Federal Rules of Civil Procedure do not require joinder of principal and agent." 127 F.Supp.2d at 1326. *See also*, *Bevels*, 100 F.Supp. at 1313:

> In addition, applying 28 U.S.C. § 1447(e) is the better approach from a practical standpoint. If the rule were to the contrary, that is, if a plaintiff could destroy diversity jurisdiction merely by naming a non-diverse defendant after removal, without seeking leave of the court, in a case such as the instant case **in which the non-diverse defendant is an agent of an insurance company which is also named** as a defendant, a plaintiff whose only motive was to avoid the federal forum could do so simply by amending the complaint once it was removed, and avoid any fraudulent joinder inquiry which could have been conducted had the non-diverse defendant been named in the original complaint. (emphasis added)

**Additionally,  neither** party sought to be added **is a party to the contract at issue.** **(Evid. Sub., Att. 1, ¶ 5; Att. 2, Exh. 1** ) As such, Plaintiff's argument that he had to join these parties when he learned of their identity from others because he "was not in possession of the contract" is without merit. (Pl. Motion to Join) The individuals cannot be sued for breach of contract, when they are not parties to the contract.

Third, Plaintiff asserts that Defendant somehow knew he did not have a copy of his 2002 contract. This assertion is unreasonable. Flowers could not possibly know that Plaintiff had "misplaced" his contract, and could only assume that Plaintiff would maintain a copy of contract with Defendant since it involved the terms of his duties and income. (Plaintiff's Aff., ¶ 3)

Moreover, Plaintiff admits that the language of his 2000 contract and 2002 contract are largely identical, and thus, whether he possessed the 2002 contract at the time he filed his complaint is largely inconsequential. (Plaintiff's Response Brief, p. 3).  Finally, Plaintiff even admits he was familiar enough with the language of the 2002 contract to quote from it even though he allegedly did not possess the same. (Plaintiff's Response Brief, p. 4)   As such, whether Plaintiff possessed or did not possess his 2002 contract is legally irrelevant to the issues before this Court.[5]

### F.  Plaintiff Reliance on Case Law is Misplaced or in Error

Plaintiff relies on *Freeport-McMoran Inc., et al. v. K N Energy, Inc.,* 498 U.S. 426 (1991) for the proposition that adding a non-diverse party post-removal destroys jurisdiction and the case must be remanded.  However, in *Freeport-McMoran*, the United States Supreme Court held to the contrary.

> The opinions of the District Court and the Court of Appeals establish that the plaintiffs and defendants were diverse at the time the breach-of-contract action arose and at the time that federal proceedings commenced.  The opinions also confirm that FMPO was not an "indispensable" party at the time the complaint was filed; in fact, it had no interest whatsoever in the outcome of the litigation until sometime after suit was commenced.  Our cases require no more than this. **Diversity jurisdiction once established, is not defeated by the addition of a nondiverse party to the action.**   A contrary rule could well have the effect of deterring normal business transactions during the pendency of what might be lengthy litigation.  Such a rule is not in any way required to accomplish the purposes of diversity jurisdiction.

498 U.S. at 428-29 (emphasis added).   Similarly, Plaintiff's reliance on *Ingram v. CSX Transporation Inc.*, 146 F.3d 858 (11th Cir. 1998) serves only to reiterate that this Court has the discretion to deny the joinder of non-diverse parties.  Finally, citation to *Brown v. TransSouth*

---

[5]Further undermining Plaintiff's argument that he needed a copy of his 2002 agreement to make his current allegations is the fact that nowhere in his Complaint is this agreement even mentioned, despite the fact that Plaintiff advised his attorneys of its existence as stated in his Affidavit, ¶ 6.

7

*Financial Corp. et al.*, 897 F.Supp. 1398 (M.D. Ala. 1995) is completely distinguishable. In *Brown*, the identity of a non-diverse fictitious party ("White") was known to Plaintiff before filing, **but unlike Porterfield**, Brown was unaware of the role played by the non-diverse party until after discovery. "The loan documents are silent as to "White's alleged role in representing factual statements. . . As a result, the court finds the plaintiffs did not know that White might be a party responsible for the alleged mispresentations." *Id*. at 1401. Based on numerous quotes and admissions by Plaintiff as cited to and explained above, it is clear that Porterfield was aware that Mr. Messer played a role in the termination of his contract and was involved in his other allegations before Plaintiff filed his Complaint with this Court.

### G. Plaintiff Will Not Be Prejudiced if Mr. Messer and Mr. Rhodes are Not Joined as Defendants

There has been no showing by Plaintiff that he will not be able to obtain any of the relief he seeks without the presence of the individual defendants, **who are management/agents of the originally named defendant Flowers**. Flowers could and would satisfy any possible judgment. *Jerido*, 127 F.Supp. 2d at 1325-26 ("The absence of such an individual defendant will not prevent the Plaintiff from obtaining full relief."); *Bevels*, 100 F.Supp. 2d at 1314 (failure to state a claim and no showing that plaintiffs will not be able to obtain full relief on their claims without the presence of individual defendant supports disallowing amendment to add individual defendant.)

**II.  Plaintiff's Motion to Remand is Due to be Denied Based on the Factors Explained Above, is Untimely and his Response to the Argument Should be Stricken as Untimely**

### A.  Plaintiff's Reply Should be Stricken as Untimely

Plaintiff's reply to the Motion to Remand was due to be filed by November 29, 2005, by Court Order dated November 8, 2005.  Plaintiff's reply, like his Motion to Remand, was filed on November 30, 2005, one day late.  As such, the reply should be stricken and not considered by this Court, especially given the fact that a key issue in Defendant's Response in Opposition to Remand is that Plaintiff did not timely file his Motion to Remand and has not shown excusable neglect.  Failing to file by the deadline imposed by the Court on this important issue is careless.

### B.  Plaintiff Has Not Revealed Any "New" Evidence That Would Support A Motion to Remand

Plaintiff has not put forth any material evidence in his Motion to Remand and Response in Support thereof, of which he was not aware at the time he filed his Complaint.   As explained above, Plaintiff was already suspicious that Mr. Messer had "fabricated" the reason for terminating his contract at the time he filed his Complaint and the affidavits of Mr. Branch and Mr. Morrow (Exhibits G and H to Plaintiff's Response) do not change his suspicion.  In addition, Mr. Branch and Mr. Morrow were not personally aware of the numerous complaints directed towards Plaintiff by Defendant's customers (Exhibit E to Plaintiff's Response), nor were they present at Mr. Messer and Plaintiff's last meeting wherein Plaintiff threatened Mr. Messer.  As such, Mr. Branch's and Mr. Morrow's speculation as to Mr. Messer's motives is pure assumption, which is not admissible per the Federal Rules of Civil Procedure.

Additionally, as explained above, Plaintiff's reliance on the *Brown* case is misplaced as the case is completely distinguishable.

## C.  Plaintiff Does Meet the Standard of Excusable Neglect

Plaintiff maintains he calendered the deadline date for his Motion to Remand.  A motion to remand is a critical pleading and thus, the standard of excusable neglect in missing the deadline is applied.  Miscalculating the thirty-day requirement on such a critical pleading does not reach the standard of excusable neglect and interestingly, Plaintiff's counsel expressed during telephone conversations that they were busy with an appellate brief as the reason for their filing near, but after, the deadline.  Likewise, they filed their reply to their Motion to Remand one day late of the date ordered by the Court and as such, simply appear careless.

WHEREFORE, for the reasons stated above, Plaintiff's Motion to Join and Motion to Amend Complaint and Motion to Remand should be Denied.

Respectfully submitted this 6th day of December, 2005.

/s/Sandra B. Reiss
Sandra B. Reiss (REI018)
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART**
One Federal Place, Suite 1000
1819 Fifth Avenue North
Birmingham, Alabama 35203-2118
e-mail:  Sandra.Reiss@odnss.com
Ph.  (205) 328-1900
Fax:  (205) 328-6000

And

Kevin P. Hishta, Esq.  (Georgia Bar 357410)
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART**
Bank of America Plaza
600 Peachtree Street, N.E.
Suite 2100
Atlanta, GA   30308
e-mail:  Kevin.hishta@ogletreedeakins.com
Ph. (404) 881-1302
Fax (404) 870-1732
*Attorneys for Defendant,*
*Flowers Baking Co. of Opelika, LLC*

## CERTIFICATE OF SERVICE

I do hereby certify that I electronically filed the foregoing with the Middle District Court's ECF system on this 6th day of December, 2005, which will forward the same via electronic notice to counsel for Plaintiff, as follows:

        The Law Offices of
        Greg L. Davis
        6987 Halcyon Park Drive
        Montgomery, AL   36117

        Dan W. Taliaferro
        Attorney at Law
        6987 Halcyon Park Drive
        Montgomery, AL  36117


                        /s/Sandra B. Reiss
                        Sandra B. Reiss

11