# Tab F –

# DECLARATION OF MICHAEL LORD

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **HENRY G. PORTERFIELD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO: 2:05-cv-937-F** |
| | ) | |
| | ) | |
| **FLOWERS BAKING CO. OF** | ) | |
| **OPELIKA, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### <u>DECLARATION OF MICHAEL LORD</u>

I, Michael Lord, having been duly sworn, hereby declare and state as follows:

1.      I am currently the Vice President of Sales for Flowers Baking Co. of Opelika, LLC ("Flowers"). I have held this position since 2005. In my position, I am responsible for addressing issues involving Flowers' distributors. I addressed various issues with Henry Porterfield.

2.      On March 16, 2005, Grady Messer reported to me that he had had a conversation with Mr. Porterfield wherein Mr. Porterfield had stated words to the effect, "somebody might die over this," and, "I'm not threatening you – I'm just telling you more people are going to get hurt over this than me." I discussed these statements with Flowers' President, Steve Bordeaux. We concluded that Mr. Porterfield had threatened Mr. Messer and that we should bar Mr. Porterfield from all Company property, including the Montgomery warehouse.

3.      By letter dated March 16, 2005, I confirmed a telephone conversation with Mr. Porterfield about his being barred from Company property. A true and correct copy of the letter I sent Mr. Porterfield on this date is attached hereto as Exhibit 1.

1

4.      By letter dated March 23, 2005, I notified Mr. Porterfield that his Distributor

Agreement would be terminated due to his failure to resume service to his Sodexho Marriott

account.  Attached hereto as Exhibit 2 is a true and correct copy of the letter that I sent Mr.

Porterfield on March 23, 2005.  Since the termination of Mr. Porterfield's Distributor

Agreement, in accordance with Section 16.4 of the Agreement, Flowers has operated Mr.

Porterfield's distributorship on his behalf until the issues in this lawsuit have been resolved.

5.      Flowers' distributors may engage helpers to assist them in running their

distributorships.  Numerous Flowers' distributors have done so, including distributors in the

Montgomery area.  For example, Cedric Martin, Don Lunsford, Doug Branch, and Lew Baxter,

all current distributors in the Montgomery area, have used helpers.

6.      I am familiar with Flowers' accounting system as it applies to Flowers'

distributors.  Flowers' distributors purchase bakery products from Flowers by placing orders

with Flowers through the distributor's handheld computer.  Products are sold to distributors at a

specified discount percentage off of the suggested wholesale price.  The distributors in turn sell

the bakery products to retail accounts.  If the bakery products are not sold by the retail account

by a certain date, the distributor is supposed to remove the product from the retail account and

issue the account full credit for that product, *i.e.*, the same price the distributor sold the product

to the retail account in the first place.  Distributors then have the option to turn in such removed

products to a Flowers' thrift store and receive credit for the distributor's cost of such product,

*i.e.,* the distributor's original purchase price from Flowers.

7.      By way of example, if the suggested wholesale price of a pack of hamburger buns

is $1.00, and the specified discount percentage is ten percent, the distributor purchases the pack

of buns from Flowers for $0.90.  If the distributor in turn sells the pack of hamburger buns to the

retail store for the suggested wholesale price of $1.00, the distributor makes a $0.10 profit. If the pack of hamburger buns does not sell in the retail account and it is removed, the retail account will be given a $1.00 credit by the distributor and the distributor in turn will receive a credit for $0.90. Thus, in this example, while a distributor would not receive a profit margin of $0.10, he or she is otherwise made whole when Flowers provides credit for the removed product ("stale credit").

8.    No Company documents exist that could establish whether a removed item had been in one of Flowers' freezers or not.

I hereby declare under the penalty of perjury that the foregoing is true and correct according to my personal knowledge, and if called as a witness, I could and would testify truthfully thereto.

Executed on _____June 21st_____, 2007.

_____Michael Lord_____

Michael Lord

Sworn to and subscribed before me
this the 21st day of ____June____, 2007.

_____Julia B. Manley_____
Notary Public

My commission expires:____MY COMMISSION EXPIRES MARCH 4, 2011____

# EXHIBIT 1 TO MICHAEL LORD DECLARATION

101 Simmon Street
Opelika, Al 36801
t 334.749.8257
f 334.749.0835

(Letterhead of Company)

BY CERTIFIED MAIL
RETURN RECEIPT REQUESTED



**Flowers Baking Co.**
of Opelika, llc

March 16, 2005

Mr. Henry Porterfield

Montgomery, AL

Re:    Distributor Agreement between Flowers Baking Co. of Opelika, LLC ("Company") and
       Henry Porterfield ("Distributor")

Dear Mr. Porterfield:

As per our conversation today, be advised that until further notice you are hereby barred from all
Company property, including the warehouse.  This action stems from your threat of harm you
made today to Director of Sales Grady Messer.

If you have any questions, please feel free to call me.

Sincerely,

Michael Lord
Vice President of Sales

FBO000081

# EXHIBIT 2 TO MICHAEL LORD DECLARATION

**101 Simmon Street**
Opelika, Al 36801
t  334.749.8257
f  334.749.0835

March 23, 2005

 **Flowers Baking Co.**
of Opelika, LLC

<u>Via Certified Mail</u>
<u>Return Receipt Requested</u>

Mr. Henry Porterfield

Montgomery, AL ˜ ˙ ˙ ˙

Re:    Distributor Agreement between Flowers Baking Co. of Opelika, LLC and Henry Porterfield dated
       March 11, 2002 (the "Distributor Agreement")

Dear Mr. Porterfield:

This letter is to notify you that your Distributor Agreement will be terminated, effective today.  As you
know, you were notified via our discussions and via letter dated March 7, 2005 of your curable breach of
the Distributor Agreement, and giving you ten (10) business days within which to cure you failure of
performance.  As of today you have failed to cure your breach and the ten (10) days have expired.
Accordingly, the Distributor Agreement will be terminated as stated above.

Under Section 16.4 of the Agreement, the Company is authorized to operate the business on your behalf
and sell the distributorship on your behalf to a qualified purchaser.  From such sale proceeds we would
deduct our operating expenses and any other amounts you owe us.  Another option is for you to sell the
distributorship directly back to the Company.  Our records indicate that you would be due approximately
$23,126 should you choose to sell it back to the Company, based on current value of the distribution rights
and amounts you currently owe us.  This amount is subject to change depending on a number of factors,
including any charges we incur in operating the distributorship until it is either resold to another distributor
or repurchased from you.

We may also be interested in purchasing your delivery truck from you, but will need to discuss that with
you further.  In the meantime, we will not use your truck.  If you wish to pick up your truck, please contact
us so we may make proper arrangements for you to do so.

Please contact me by Saturday, April 2, 2005 to let me know which option you wish to pursue.  If we do
not hear from you by the close of business on that date, we will proceed to sell your distributorship to a
third party as noted above.  We look forward to hearing from you.

Very truly yours,

Michael Lord
Vice President of Sales

FBO000076