IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| HENRY PORTERFIELD,<br>　　Plaintiff<br>v.<br><br>FLOWERS BAKING COMPANY OF<br>OPELIKA, LLC, GRADY MESSER,<br>CALVIN RHODES, STEVE BORDEAU,<br>　　Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>* | Case No. 2:05-cv-937-F |

PLAINTIFF'S EXHIBIT 5

## AFFIDAVIT OF PLAINTIFF HENRY PORTERFIELD IN OPPOSITION TO SUMMARY JUDGMENT

Before me, the undersigned authority, personally appeared Henry Porterfield, who being first duly sworn, did depose and state under oath as follows:

1. "My name is Henry Porterfield. I am the Plaintiff in the above-styled case."

2. "In 1994, after working for Defendant Flowers Baking Company of Opelika, LLC for several years, I was presented with a Distributor's Agreement contract by Flowers, which I signed. This Distributor's Agreement stated that I was to deliver fresh bread to customers of Flowers within a specified geographic area that was to be my delivery route."

3. "The Distributor's Agreement I signed in 1994 was subsequently renewed in later years, most recently in 2000 and 2002. Section five (V) of my Distributor's Agreement stated that my obligations as a Distributor were to use my 'best efforts to develop and maximize the sale of company products to outlets within [my] territory.'"

4. "Flowers obtained a freezer for its warehouse sometime in 2000. Previous to the year 2000 or 2001, in the dozen or more years I had been delivering bread for Flower, the company did not supply me with frozen bread to deliver to my customers. The needs of my customers, prior to that time, were met with fresh baked product that had not been frozen. Sometime around 2003 or 2004 I began having problems with Flowers providing frozen, as opposed to fresh baked, products to me for delivery to the customers on my route. This problem continued up to the date of my termination from the company in March of 2005. For the last two years of my Distributor's Agreement with Flowers, I had difficulties with Flowers's use of frozen bread, it was a continuing and repeated problem during the last two years previous to my termination, and I complained about it to people employed by Flowers. I was told by management of Flowers to never disclose to customers that the company was providing frozen bread for me to deliver to them."

5. "During several of the years I was delivering bread for Flowers, the company would bake bread, mark it with a date stamp on the day it was baked, and then freeze it. Months later, Flowers would remove the bread from the freezer, remove the date stamp proving the bread's freshness had long since expired, and restamp it with a date that was months after it had been baked, and then give it to me to deliver to my restaurant customers as fresh. These acts of Flowers constituted changing product marked with a correct date into product marked with a false date, and these acts required of me to deliver 'out of code' product to my customers.

6. "I did have the right to refuse frozen goods supplied by Flowers, and sometimes I did. But there were times when I had to use the frozen goods Flowers kept at the warehouse because there were no fresh baked goods available. I was not forced to deliver frozen goods by Flowers, but I was told to deliver frozen goods by management. If I did not and a customer did not receive its bread products, I knew Flowers would treat that as a breach of my Distributor's Agreement and use that as an excuse to terminate my contract. In that sense, I had to deliver frozen bread products even though I knew they were not fresh. I needed my job."

7. "My Distributor's Agreement prohibited Flowers from providing me with 'out of code' product. My superiors at Flowers told me not to disclose to its customers that the bread I delivered to my restaurant customers had been frozen for months and was 'out of code.' I was also told not to disclose, to anyone outside of Flowers, that the date stamp had been changed. I did as I was told and did not disclose the fact that the bread was frozen because Flowers claimed that bread that was frozen for 2 months or less was still fresh. The freezer had concerned me for years, but I did as I was told. Later, however, during the last two years of my contract, I began receiving bread that was frozen for more than 2 months. Sometimes it was frozen for 3 months or more. This was when I became very concerned about the product I was delivering and worried about my customers receiving inferior and/or stale product. I continued to complain about this practice, but I did as I was instructed by Flowers and did not tell my customers of Flowers's deception."

8. "In March of 2005, specifically on or about March 3, 2005, my delivery truck broke down while I was en route to deliver bread to Sodexho Troy State University at Montgomery (Sodexho TSUM), a small account on my route. At the time my delivery truck broke down, there was only a small window of time for me to timely deliver the bread to Sodexho TSUM that day. That window of time was only 30 to 40 minutes, and after that the delivery would be too late."

9. "My delivery truck had busted a hose and would not run. It subsequently had to be towed away for repairs. I only had about 10 minutes to make the delivery by the time I realized the seriousness of the problem with my delivery truck and realized I could not repair it to make the delivery on time. No one I knew, and no other distributor delivering for Flowers, could have made it to my truck's location, unloaded the bread from my truck, loaded it onto another truck, and driven it to Sodexho TSUM in 10 minutes. It would have taken anyone at least 25 minutes just to reach me, so it was impossible for me–or anyone–to make a timely delivery of my bread to Sodexho TSUM on March 3, 2005 after my truck broke down. At the time my truck broke down, no other deliveryman would have been available to make this delivery. That is why the delivery of bread to Sodexho TSUM was not timely made on March 3, 2005."

10. "On March 7, 2007, a letter was sent to me from Flowers informing me that I was in breach of my Distributor's Agreement and that I would no longer be permitted to service Sodexho TSUM. The letter further stated that I had 10 business days to

'cure' my 'failure of performance' by receiving permission to 'resume servicing Sodexho Troy St. at Montgomery,' and that if I did not accomplish this, Flowers may terminate my Distributor's Agreement."

11. "After receiving the March 7, 2007 letter from Flowers, I used my best efforts to 'cure' this alleged breach of delivery service involving Sodexho TSUM. I enlisted the aid and assistance of City Councilman James Knuckles and County Commissioner Jiles Williams, Jr., both of whom are also ministers, and had them contact the manager of Sodexho TSUM. They tried to meet with the manager on my behalf, but she refused to speak with them. I also spoke with this manager at Sodexho TSUM on at least three occasions and made every effort possible to try and convince her to allow me to resume my deliveries to Sodexho TSUM. She did tell me I could resume my deliveries and she also said she would begin receiving deliveries from another bread company at the same time she was taking my deliveries from Flowers."

12. During the latter part of 2004, it became known that WalMart and Publix were both opening new grocery stores on my delivery route. This meant that the amount of deliveries on my route would greatly increase and my route would be dramatically more profitable. I personally know Flowers was aware of these two new stores."

13. "On March 16, 2007, I was at the Flowers warehouse and had a conversation with Grady Messer, the Flowers sales manager for my area. In this conversation, I told

    him I believed he was racist. That day I was informed I was barred from the warehouse. I had previously complained to Grady Messer about being given 'out of code' product by Flowers to be delivered to my customers. His action of barring me from the warehouse prevented me from personally working my route and picking up product from the warehouse to deliver."

14. "Grady Messer has stated that I threatened him on March 16, 2007, but that statement is untrue. I never threatened Grady Messer. I never made any threatening statement that day. I've never threatened him in my life."

15. "On March 16, 2005,, I made arrangements for my son, Marcus Porterfield, to perform my deliveries on my route. I also told him to videotape the frozen bread in the freezer at the warehouse. Marcus had previously delivered for Flowers and Steve Stevenson, a sales manager for Flowers, once told me Marcus 'was the best pull-up man he had.' Since management had such a high opinion of Marcus, I naturally thought there would be no problem with Marcus making the deliveries on my route. He had delivered product on my route before.

16. "On the same day I was barred from the warehouse, Marcus was also banned from the warehouse by Flowers and he was thus prevented from running my route. It was clear to me that Flowers was going to making it impossible for me to run my route."

17. "On March 23, 2007 Flowers informed me that they were terminating me from my delivery route because they claimed I had failed to resume delivery services to

Sodexho TSUM. On March 17, 2005, Flowers began running my route with Flowers company employees or with people they hired or employed."

18. "Since terminating my Distributor's Agreement, Flowers has systematically run my route in such a manner as to make it unprofitable. Flowers has charged debts and expenses to my account that are improper and/or unnecessary. The weekly accounts on my route, sent to me by Flowers, contain expenses and charges that are unaccounted for by them. Their own accountant, when questioned by my attorney, cannot explain the charges and expenses placed on my account, and he cannot explain the numbers that appear on my weekly accounting statements. [See Deposition of XXX attached hereto].

19. "When I ran my delivery route, I made a profit. Since I was terminated from the route, and since Flowers has assumed running my route, the volume of deliveries has increased dramatically. My volume of product delivered on my route, with the opening of new Publix and Walmart grocery stores on my route, has more than doubled, yet Flowers's accounting shows that money is being lost on my route. Flowers is intentionally running my route in such a manner, and with such questionable and improper accounting practices, so as to ensure my route loses money, or at a minimum, to make it appear as though it is losing money through the use of false and improper accounting practices."

_____
Henry Porterfield

STATE OF ALABAMA
MONTGOMERY COUNTY

Sworn to and subscribed before me this the 16 day of July, 2007.

_____
Notary Public
EXP: 08/10/09

_____
Dan W. Taliaferro (TAL 006)
Gregory L. Davis
Attorneys for Plaintiff

Greg L. Davis, Esq
Dan W. Taliaferro, Esq.
6987 Halcyon Park Drive
Montgomery, AL 36117


CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I have served a copy of the foregoing document by U. S. Mail, first class postage prepaid and properly addressed, on the 16 day of July, to the following:

Kevin P. Hishta, Esq.
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
Bank of America Plaza
600 Peachtree Street, NE
Suite 2100
Atlanta, GA 30308


Sandra B. Reiss, Esq.
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
One Federal Place, Suite 1000
1819 Fifth Avenue North
Birmingham, AL 35203-2118

_____
Dan W. Taliaferro