**DEFENDANT'S SUPPLEMENTAL EVIDENTIARY SUBMISSION
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

TAB   M

(Second) Deposition of Michael Lord

# DEPOSITION OF MICHAEL LORD

# VOLUME II

## July 17, 2007

## Pages 89 through 138

## PREPARED BY:

**Haislip, Ragan, Green, Starkie & Watson, P.C.**
**566 South Perry Street**
**Post Office Box 62**
**Montgomery, AL  36104**
**Phone: (334) 263-4455**
**Fax: (334) 263-9167**
**E-mail: haislipragan@charter.net**

Page 89

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

HENRY PORTERFIELD,
        Plaintiff,
vs.                CIVIL ACTION NO.
                   2:05-CV-937-MEF

FLOWERS BAKING COMPANY OF
OPELIKA, LLC,
        Defendant.

* * * * * * * * * * * * *

VOLUME II

* * * * * * * * * * * * *

DEPOSITION OF MICHAEL LORD, taken

pursuant to stipulation and agreement before Tracye

Sadler, Certified Shorthand Reporter and

Commissioner for the State of Alabama at Large, at

the Tiger Town Inn, 205 21st Street, Opelika,

Alabama, on July 17, 2007, commencing at

approximately 9:10 a.m.

Page 90

APPEARANCES

ON BEHALF OF THE PLAINTIFF:
Mr. Greg L. Davis
LAW OFFICES OF GREG L. DAVIS
Attorneys at Law
6987 Halcyon Park Drive
Montgomery, Alabama 36117

ON BEHALF OF THE DEFENDANT:

Mr. Kevin P. Hishta
Ms. Sandra B. Reiss
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
Attorneys at Law
One Federal Place, Suite 1000
1819 Fifth Avenue North
Birmingham, Alabama 35203

ALSO PRESENT:
Mr. Henry Porterfield
Mr. Brad Alexander

* * * * * * * * * * * *

EXAMINATION INDEX

BY MR. DAVIS . . . . . . . . . . .   5
BY MR. HISHTA . . . . . . . . . .  45

(No exhibits marked to this deposition.)

Page 91

STIPULATIONS

It is hereby stipulated and agreed by and
between counsel representing the parties that the
deposition of MICHAEL LORD is taken pursuant to the
Federal Rules of Civil Procedure and that said
deposition may be taken before Tracye Sadler,
Certified Shorthand Reporter and Commissioner for
the State of Alabama at Large, without the
formality of a commission, that objections to
questions other than objections as to the form of
the question need not be made at this time but may
be reserved for a ruling at such time as the said
deposition may be offered in evidence or used for
any other purpose by either party provided for by
the Statute.

It is further stipulated and agreed by and
between counsel representing the parties in this
case that the filing of said deposition is hereby
waived and may be introduced at the trial of this
case or used in any other manner by either party
hereto provided for by the Statute regardless of
the waiving of the filing of the same.

It is further stipulated and agreed by and

Page 92

between the parties hereto and the witness that the
signature of the witness to this deposition is
hereby not waived.

* * * * * * * * * * * *

THE COURT REPORTER:  Usual
    stipulations?
MR. HISHTA:  Yes.  And he'll read.
MR. DAVIS:  That's fine.

MICHAEL LORD

The witness, after having first been duly sworn
to speak the truth, the whole truth, and nothing
but the truth, testified as follows:

EXAMINATION

BY MR. DAVIS:
Q.  Mr. Lord, I'm not going to get into any
    particulars from last time, but I just want
    to go over some stuff that we covered
    yesterday in the deposition.  And your
    counsel has informed me yesterday that you
    were the person most knowledgeable about

Deposition of Michael Lord                                                July 17, 2007

Page 93

1    pay by scan inventory.
2        I'm just going to pick up -- we're
3    looking at Plaintiff's Exhibit Number 3.
4    I'm just going to pull out a page here.
5    I've got FBO000908.
6    A.  Okay.
7        MR. HISHTA:  Do you have a copy
8        or --
9        MR. DAVIS:  That's fine.  I don't
10       need one.  I'll look at it
11       upside down.
12   Q.  Yesterday we were having difficulty, I
13       guess, deciphering these weekly summary
14       pages.
15   A.  Okay.
16   Q.  If you would, explain for us the pay by
17       scan figures that are on this particular
18       document 908 --
19   A.  All right.
20   Q.  -- and as it relates to -- let's take the
21       next one, 909.
22   A.  Okay.  I'm trying to think where to start
23       here.  What exactly -- what figure on here

Page 94

1    do you not ...
2    Q.  All right.
3    A.  Because I couldn't see exactly what y'all
4        were looking at.
5    Q.  Let's do this.  Let me just start at the
6        top of the page.
7    A.  Okay.
8    Q.  This is what I did yesterday.
9    A.  Okay.  That will be good.  That will be
10       good.
11   Q.  At the top of the page you've got the
12       figures here, $8,344.82.
13   A.  Okay.
14   Q.  And that figure is for what?
15   A.  That is the balance forward from his
16       previous week.
17   Q.  Okay.  As we work down the page -- actually
18       there's two columns as we work down the
19       page.
20   A.  Okay.
21   Q.  You've got -- what's this, accountability?
22   A.  Right.
23   Q.  I'm reading upside down.

Page 95

1    A.  Accountability.
2    Q.  You've got various figures, pluses and
3        minuses, in the accountability which brings
4        you down to the bottom here of 151.85 for
5        the accountability column.
6    A.  Correct.
7    Q.  And that's a negative figure.
8    A.  No.
9    Q.  I mean, it's a --
10   A.  Right there --
11   Q.  It's not a -- from an accounting standpoint
12       it's a negative figure.  It's an amount
13       that's owed; right?
14   A.  Right now on this particular -- the new
15       distributor balance here is $151.85.
16       That's what --
17   Q.  That's what he owes --
18   A.  -- Mr. Porterfield would owe us right now.
19   Q.  Okay.  That's under the accountability?
20   A.  Correct.
21   Q.  The next column over is discount --
22   A.  Earnings.
23   Q.  -- earnings.  As you work down that figure,

Page 96

1    you've got 785.16.  And that's what Flowers
2    would owe Mr. Porterfield?
3    A.  That is the discount he made on the
4        product --
5    Q.  On the product.
6    A.  -- from that week.
7    Q.  From that week.
8    A.  Based on what he was charged for his
9        product and less any load shortage, less
10       any transfers -- or additional transfers,
11       if he had transferred more than he
12       transferred out, and less his sales.
13       That's what his discount was.
14   Q.  What his discount was?
15   A.  Right.
16   Q.  And then you go across that item line
17       there, which is new distributor --
18   A.  New distributor balance.
19   Q.  -- balance.  You take the -- add these two
20       figures together and that comes up with a
21       633.31.
22   A.  Right there that shows that we owe him
23       $633.31.

2 (Pages 93 to 96)

Page 97

1  Q.  Right. Then beneath that you've got your
2      expenses, business expenses, that are
3      charged to that particular account, that
4      particular account being 2069.
5  A.  69.
6  Q.  They're pretty self-explanatory, and we
7      went over those yesterday. There's no
8      problem with that?
9  A.  Right.
10 Q.  Those business expenses total -- what's
11     that?
12 A.  957.30.
13 Q.  Now, when you take the figures on the right
14     side of the page starting with 8,344.82,
15     you bring all these down and it comes out
16     to what figure here?
17 A.  $8,668.81. That is what -- oh, go ahead.
18 Q.  Tell me what that figure is.
19 A.  Okay. This figure right here is what
20     Mr. Porterfield owes us right now without
21     any advance on his pay by scan inventory
22     and pay by scan invoices that he charged in
23     the current week. That right there is what

Page 98

1      he would owe us.
2  Q.  That's the figure he would owe you?
3  A.  Correct.
4  Q.  But during that week there were pay by
5      scan -- what's the next line down?
6  A.  This is pay by scan credits. It tells what
7      his inventory is.
8  Q.  Let's take pay by scan credits.
9  A.  Okay. Well, actually it's describing what
10     the next two are.
11 Q.  All right.
12 A.  Prior week pay by scan inventory is the
13     next line there.
14 Q.  And what is that?
15 A.  This is the inventory that was counted on
16     the Saturday before this statement. It
17     tells you which date it was. It was 10-15
18     of 2005. That is the inventory that was
19     counted by -- I'm going to -- I know
20     Mr. Porterfield wasn't running the route
21     then, but it was counted by the person
22     that was pulling the route that day. That
23     is the inventory that they went through

Page 99

1      item by item and counted what was on the
2      shelf and what was in the back room.
3  Q.  That is inventory that he has not been paid
4      for yet?
5  A.  That is correct. That is correct. That's
6      why we're giving him a temporary credit for
7      it right here, so he doesn't have to blunt
8      the full -- what's the word I'm looking --
9      so he doesn't have to pay for all of it.
10     We're giving him a temporary credit based
11     on what he said was in that store the
12     previous week.
13         Even though it has not gone through the
14     register yet, we're giving him a temporary
15     credit for that. That's not his money yet.
16     It's just a temporary credit to try to make
17     him whole. Because most distributors can't
18     go in -- because pay by scan works a week
19     behind on the point of sale data and your
20     inventory. It's all a week behind. So if
21     we didn't give him credit for this right
22     here, he would owe us this $8,000 up here.
23     So it is just a temporary credit.

Page 100

1  Q.  And the next line down is what?
2  A.  That is the -- it says current week
3      pay by scan delivery tickets. And it gives
4      the actual dates that the tickets were made
5      from, from October 16th, '05, through
6      October 22nd of '05. That is what the
7      tickets that he generated through his
8      hand-held for that particular week, which
9      is the current week that he was in -- that
10     is where he received credit for that
11     product.
12         Now, that product has not gone through
13     the -- he has not received pay by scan
14     credit for it yet here. Okay. He won't
15     receive credit for anything here until the
16     following week because it works a week
17     behind.
18         So, again, this is just a temporary
19     advance to try to make the distributor
20     whole to keep him from having to pay for
21     all the inventory that was in his store
22     that week that he put in. Because he
23     didn't -- he's not going to receive any pay

Page 101

1   by scan credit for it until the following
2   week. And the same thing with his
3   inventory that he had on Saturday. He's
4   not going to receive credit for that until
5   the following week. So we give him a
6   temporary credit right there to try to make
7   him whole for that week so he doesn't have
8   to blunt the full -- full inventory.
9   Because most distributors can't go out
10  there and carry all that themselves. So we
11  look at it like we're going to do this to
12  help you out so you don't have to carry the
13  whole inventory.
14  Q.   All right. Now, flipping over to the next
15  page.
16  A.   Yes, sir.
17  Q.   So instead of carrying the $6,355 forward,
18  you carry the $8,668.81 forward?
19  A.   Right. That is money that -- this is
20  really not his. This is a temporary
21  credit. It's a temporary credit. It's not
22  money -- he's going to actually receive
23  this in the following week. Okay. And let

Page 102

1   me --
2   Q.   Let's just take this though. We're
3   supposed to carry this 866.81 --
4   A.   81.
5   Q.   81 -- I'm sorry -- $8,668.81 forward to the
6   next one.
7   A.   Correct.
8   Q.   But if we look to the next one, which is
9   909 --
10  A.   Right.
11  Q.   -- it's $8,723.23.
12  A.   Right.
13  Q.   And why is that figure more than the
14  distributor balance?
15  A.   That's -- I really could not say at this
16  time. I really couldn't.
17  Q.   And this is just one I picked at random out
18  of here. I didn't have this --
19  A.   Can I use this?
20  Q.   Sure. I'm just trying to figure it out.
21  A.   Okay. There are several reasons why that
22  could be -- well, let me back up a minute.
23       There's only one reason that I can

Page 103

1   think of right now why it would be. If a
2   distributor puts unauthorized product into
3   a pay by scan account -- and the easiest
4   way I know to say it is -- let's -- we have
5   a lot of restaurant products that we sell
6   that are bulk package; okay?
7        If a distributor were to sell
8   Winn-Dixie in this case -- because this is
9   Winn-Dixie right now. If they were to sell
10  them product that was not authorized to
11  sell in Winn-Dixie, for instance, bulk
12  buns, that line number is not set up to
13  flow through the system, and it would kick
14  it out. And they wouldn't receive credit
15  for it. It would automatically flip
16  through there. So his balance forward
17  would change by whatever the amount of that
18  product was.
19       If it was -- where are we at here?
20  We're going from 42 to 43. So in this case
21  it is -- it's $54.42 difference right
22  there. I don't know this without really
23  digging into it deeper, but it could be

Page 104

1   that there was $54.42 worth of unauthorized
2   products that was charged into that store
3   that week.
4   Q.   Well, sitting here today is there anything
5   in the documents that would tell you what
6   it is?
7   A.   No. There's nothing in the documents.
8   Q.   There's no line item that would tell us
9   anything?
10  A.   There's no line item that I'm aware of that
11  would tell you.
12  Q.   And this particular time was 10-16-2005 to
13  10-22-05 and 10-22-05 to 10-29-05?
14  A.   Correct.
15  Q.   And Flowers was running this route for
16  Mr. Porterfield at that time; correct?
17  A.   That's correct.
18  Q.   If we look at the inventory -- pay by scan
19  inventory line item here, the $571.11, that
20  means that this person that was working for
21  Flowers running this account went out to
22  the stores and determined that there was
23  $571.11 worth of inventory still in the

Deposition of Michael Lord                                      July 17, 2007

Page 105

1    store that was pay by scan; is that right?
2    A.  In the -- I don't -- I believe there was
3       only one Winn-Dixie account at that time.
4       But that's how much inventory would have
5       been in the store that they counted,
6       $571.11.  That's exactly what that number
7       means.
8    Q.  That's what's in inventory?
9    A.  That was in the store on Saturday, on
10      October 15th.
11   Q.  On Saturday.  And then this week $1,742.69
12      worth of material was delivered to that one
13      Winn-Dixie.
14   A.  During this particular week.
15   Q.  During that week
16   A.  During the current week statement, that is
17      correct.
18   Q.  So now Winn-Dixie has whatever these two
19      figures -- you've got your calculator
20      there.  What are those two figures?
21   A.  571.11 and 1742.69.  Okay.
22   Q.  And what does that total?
23   A.  That's $2,313.80.

Page 106

1    Q.  Okay.  So that's what Winn-Dixie has in the
2       store.  Now, the next week they're going to
3       sell part of it?
4    A.  That's correct.  Now, if you look --
5    Q.  If we look at the next statement, which is
6       the next date down -- I think I'm right.
7       But if we go to the very next week, which
8       is up here --
9    A.  No.  You're right.  You're right.
10   Q.  -- and we go down here and this week
11      there's a point of sale data.  That means
12      that they sold $1,435.85?
13   A.  Correct.
14   Q.  Correct.  So if we minus that from what we
15      know is in the store --
16   A.  From 1435.88?
17   Q.  85.
18   A.  85.  Okay.
19   Q.  And what do you come up with?
20   A.  I haven't done everything.  Hang on a
21      second.  I need to let you ask a question,
22      I know here.  I'm jumping ahead.
23         Okay.  We're going to do it like you

Page 107

1    got it.  $2,313.80.  All right.  You take
2    away 1435.85.  All right.  That's 877.95.
3    Q.  877.95.  Okay.  Now, we know that the store
4       had inventory the week before and product
5       was delivered the week before.  So if you
6       add those two together, that comes up to
7       the $2,313.80.  We also know that the store
8       received $1,435.85 in sales that following
9       week.  So if you subtract those, then there
10      should be $877.95 of product left in the
11      store in inventory?
12   A.  Uh-huh (positive response).  Or shrink.
13   Q.  Or shrink.
14      Which is this number right here.
15   Q.  All right.  So let's minus the shrink from
16      it.
17   A.  That's $74.76.  That's 803.19.
18   Q.  All right.  Now, that's what should be in
19      inventory left in the store?
20   A.  Okay.  And we gave him credit for $854.
21   Q.  All right.  So then --
22   A.  So we gave him more credit --
23   Q.  More credit than what was --

Page 108

1    A.  -- than what he should have received.
2    Q.  -- than he should have received.
3    A.  Exactly.
4    Q.  Is there a reason why there was more
5       credit?
6          Because the reason why I'm asking is, I
7       just picked this one by random that we just
8       did.
9    A.  Right.
10   Q.  If you go through each one of these and
11      look, the numbers never seem to add up --
12   A.  Right.  I understand.
13   Q.  -- throughout the whole batch of them.  And
14      when I say the numbers, I'm talking about
15      the numbers regarding pay by scan.  So if
16      they -- why is it that there's a variance
17      or there's a difference in the numbers as
18      you go through week by week?
19   A.  The reason -- the only reason that I can
20      give is the one I told you before is if
21      you -- if unauthorized product is put in
22      the store, then you -- the system will not
23      give them credit for that in their -- they

Deposition of Michael Lord

July 17, 2007

Page 109

1  won't get credit for it in point of sale
2  data because it's something that can't go
3  through the register. It's not
4  authorized. They can't get credit for it
5  in shrink because it's not going to
6  calculate in their shrink. And they can't
7  get credit for it in inventory because it's
8  going to kick it out because it's an
9  unauthorized item.
10  Q. So the distributor just has to eat that?
11  A. Well, he just didn't get credit for it.
12  Q. He didn't get credit for it?
13  A. He didn't get credit for it. But --
14  Q. But he got charged for it?
15  A. Yeah, he was charged for it. But he's not
16  supposed to put it in an account where it's
17  not authorized.
18  Q. So what you're telling me is that in our
19  example here in this date up here that if
20  product was put into a store that was not
21  authorized, then this account did not get
22  credit for it?
23  A. If -- if that is the case. I'm not saying

Page 110

1  that's the case because I don't know. I
2  don't know.
3  Q. That's the only explanation you knew of as
4  to why the figures were --
5  A. That's the only one that I can give at this
6  time. Without digging into it and looking
7  at other factors, I -- that's the only
8  explanation I could give you at this time.
9      MR. HISHTA: And I'm not trying to
10     convolute the record either.
11     But in your example where
12     we're expecting $803 of
13     inventory on the shelf,
14     there's actually -- you know,
15     it could be from a
16     miscounting, you know, error,
17     but he ends up getting more
18     credit for the advance than
19     what you would anticipate from
20     the arithmetic model.
21     MR. DAVIS: And we could go
22     through dozens of them and
23     see, but they always seem to

Page 111

1  be off --
2  A. With that -- with what he said --
3      MR. DAVIS: -- with each -- with
4      each different week.
5      MR. HISHTA: If you go to 2007 --
6      at the beginning of 2007 and
7      maybe just run through a few
8      examples, what it seemed to --
9      whatever the issue was seemed
10     to have corrected itself. So
11     if you want to run through
12     arithmetically to see how it's
13     working --
14     MR. DAVIS: I understand how it's
15     working now.
16  Q. Yesterday we could not get an explanation
17  to determine how this all worked. I think
18  that you've helped, Mr. Lord, figure this
19  out. But still I'm just wondering about
20  these figures, why they don't match up.
21  A. What you've got to keep in mind right here
22  is that this is a temporary credit. It is
23  temporary trying to make the distributor

Page 112

1  whole from the inventory that he would have
2  to carry. We don't want him to have to
3  carry all of that. So that is just
4  temporary.
5      Now, if it's off one way or the other,
6  when it's all said and done it's going to
7  work out. Pay by scan is a continuing
8  rolling over. It rolls from week to week
9  to week to week to week. It continues to
10  roll the whole time. It's never going to
11  come out to be -- because you're a week
12  behind. Does that make sense?
13  A. It does make sense.
14  Q. I asked this yesterday. The revaluation
15  variance, then, is the shrinkage?
16  A. Yes, sir.
17  Q. Do you know of anywhere in the contract
18  that allows for the distributor to be
19  charged for shrinkage?
20  A. I do not.
21  Q. Is there --
22  A. But can I add something to that?
23  Q. Sure.

Deposition of Michael Lord                                                    July 17, 2007

Page 113

1   A.  I do know that we've covered with the
2       distributors about shrink and how Flowers
3       is going to handle shrink with the
4       distributor.  And I do know that Flowers is
5       eating half of the shrink in the majority
6       of the cases.  We're eating three-quarters
7       of the shrink in the case of Wal-Mart.
8       We're eating 75 percent of it, and the
9       distributor is eating 25 percent of it --
10      or absorbing 25, whatever you want to call
11      it.
12  Q.  But nothing in the contract was added to
13      the contract, modified to the contract to
14      allow the -- to allow Flowers to charge the
15      distributors for that shrinkage, was
16      there?
17          MR. HISHTA:  Objection to the
18              extent it calls for a legal
19              conclusion.
20  Q.  If you know.
21  A.  There's nothing -- there's nothing --
22      shrink is not mentioned in the contract.
23      We've sat down and we've covered with

Page 114

1       distributors how we're going to do that.  I
2       mean, to me it would be well to the
3       distributor's advantage.  If they did
4       everything exactly right charging it in,
5       taking it out and counting, I mean, to me
6       it would be very much to their advantage to
7       use pay by scan because it saves them the
8       time of having to check in and check out.
9       And that could take hours in a week's time.
10  Q.  The other question I've got about the
11      shrinkage on the pay by scan is this figure
12      here on 909, the $74.76.
13  A.  Okay.
14  Q.  What does that figure represent as far as
15      the shrinkage?
16  A.  That is the difference in what in this case
17      Winn-Dixie said went through the registers
18      from this time period and what we -- or
19      what the distributor inventoried on this
20      day.  So what was inventoried in the store
21      on that Saturday should -- if there was
22      zero shrink -- wait a minute.  I'm messing
23      up.  I got to get myself straight here.

Page 115

1       Their ending inventory on Saturday
2       should equal -- no, that's right.  Hold
3       on.  Ask me again what you're wanting to
4       know because I'm getting -- I'm confusing
5       myself here.  I'm trying to make it too
6       complicated.
7   Q.  All right.  Let's just take it very, very
8       simple.  Revaluation variance, $74.76
9       credit.
10  A.  Right.
11  Q.  That's not a minus.  That's a credit;
12      correct?
13  A.  And we give him credit --
14  Q.  That means that you're giving him credit
15      because there's more inventory in the store
16      than what they --
17  A.  No.  There's less inventory.
18  Q.  There's less inventory.
19  A.  We're giving him credit for the shrink
20      because on the fourth week we're going to
21      charge him back for 25 percent of his.  So
22      we give him credit to balance him out that
23      week.  We give him credit for it that week.

Page 116

1   Q.  So in week one he gets a credit for it.
2   A.  Okay.
3   Q.  Is that right?
4   A.  Correct.
5   Q.  Week two he gets a credit for it, week
6       three.  And then week four --
7   A.  Week four he gets a credit for it.
8   Q.  He gets a credit for it.
9   A.  He gets a credit for all four weeks.  And
10      then in the fifth week we would go back and
11      make an adjustment on --
12  Q.  What line item?
13  A.  Pay by scan shrink charges, right there.
14  Q.  So that happens every fifth week?
15  A.  Correct.
16  Q.  So if we take the revaluation variance and
17      add those up --
18          For four weeks or for five weeks?
19  A.  Four weeks.
20  Q.  -- for four weeks and then divide it by
21      four, that's what the figure should be on
22      the pay by scan shrink charge?
23          I'm just trying to figure out how --

Deposition of Michael Lord                                                      July 17, 2007

Page 117

1    Q.  If you added up four weeks' worth -- just
2         say it was $25 a week.  That would be a
3         hundred dollars in a four-week time period,
4         and we're going to charge him back 25
5         percent of it.
6              MR. HISHTA:  And when you're
7              talking about four weeks,
8              you're talking about four
9              weeks of the revaluation
10             number --
11             MR. DAVIS:  Variance.
12             MR. HISHTA:  -- variance that he's
13             receiving credit for?
14             THE WITNESS:  Correct.
15   Q.  Is that correct?
16   A.  Yes.  Yes.
17   Q.  Just so I'm clear, you take four weeks of
18        revaluation credit.  You add them up.  And
19        if they're each $25, he gets a credit for
20        it.  In that fifth week you're basically
21        going to charge him a shrinkage of $25?
22   A.  On pay by scan shrink charges at the
23        bottom.  But he's still going to receive --

Page 118

1         he's going to receive a revaluation
2         variance every week.  That's going to be on
3         there week in, week out because it's an
4         ongoing flow.  It's steady moving the whole
5         time.
6    Q.  Okay.  I just wanted to make sure I knew
7         exactly how to compute that as you go
8         through it.
9    A.  Right.  That is going to be on there every
10        week and every -- if it was weeks one
11        through four we were looking at here, then
12        on the fifth week you would have a charge
13        here for his shrink.  And then five, six,
14        seven, and eight goes by.  In the ninth
15        week you're going to have a charge there.
16        Nine, ten, eleven, and twelve.  The
17        thirteenth week you're going to have a
18        charge there.  Every four weeks.
19   Q.  Do we know on here what weeks those are as
20        far as in the scheme of things?
21   A.  Yeah.  Week 43 right here.
22   Q.  But, I mean, in your -- all right.  Well,
23        here's a week 44, and this has a pay by

Page 119

1         scan shrink charge.
2    A.  Okay.
3    Q.  So this would be the fifth week in this
4         scenario?
5    A.  Let me see.  Actually week 44 would have
6         been the end of a period.  And this was
7         also done in a time -- we changed the way
8         we were charging shrink.  We were charging
9         shrink once a quarter, which would be every
10        first 16 weeks and then 12 weeks thereafter
11        that.  But we changed it so that the
12        distributor didn't have a big impact hit on
13        him at one time when we charge them back.
14        We started doing it once a period.  Number
15        one, it was better for the distributor not
16        to have one big whammy hit on him at one
17        time, one big charge to him at one time,
18        and it was also better for accounting to be
19        able to keep up with it better.
20            So at this time in 2005 it's very well
21        possible that we were not charging it back
22        by the period.  I can't remember the exact
23        date when we started charging it by the

Page 120

1         period.  But I will say this:  On pay by
2         scan charges with Mr. Porterfield's route,
3         there's only a couple of times where we
4         charged him with a shrink.  We've been --
5         the company has been eating most of his
6         shrinks so far.  There's only, I think,
7         two, maybe three instances where we
8         actually charged him for shrink since he
9         hasn't been running the route and we've
10        been pulling it on his behalf.  We've been
11        eating all of it except for this one
12        instance here and I believe there was one
13        other one that I've seen.
14   Q.  Yesterday -- there was another thing I
15        wanted to ask you about.  Yesterday your
16        name came up, too, on another item looking
17        back at Plaintiff's Exhibit Number 2.  I
18        believe yesterday that we were told that
19        the repurchase price figure of $63,430 came
20        from you.
21   A.  That is correct.
22   Q.  Tell me how you came up with that figure.
23   A.  We take a territory net sales report that

Deposition of Michael Lord                                                July 17, 2007

Page 121

1    we have that break downs in this instance
2    2069 territory. It has -- it pulls up
3    every account that we sold to. It breaks
4    it down by the class. It breaks it down by
5    the item if we need it to. Okay. We know
6    which sales are branded sales, and through
7    the report it tells us what the brand
8    classes are. And we're able to take away
9    any bid business, any private label sales
10   in there, and that's where the figure --
11   that's how we came up with it. It's a
12   52-week average.
13   Q.  And you ran it at what time?
14   A.  Actually I don't know exactly when those
15   figures were pulled. Because I pulled
16   something up several weeks ago -- it may
17   have been a month ago. I don't remember
18   the exact date -- just to see what his
19   route was running in brand sales now. And
20   it was probably sometime after our
21   deposition last.
22   Q.  Your deposition?
23   A.  Correct. I was just curious as for myself,

Page 122

1    not for any reason whatsoever. I was just
2    curious for myself as to what it was
3    running in brand sales now. And I had run
4    that report and I gave it to -- I gave
5    those figures to Jerry just to -- like I
6    said, this is not a good set-in -- this
7    is --
8    Q.  Do you still have that report that you did
9    to get those figures?
10   A.  I probably do. I can't say one hundred
11   percent sure. But, I mean, it can be made
12   again. I mean --
13   Q.  Could you run one or either get that report
14   and give it to your lawyer so he could pass
15   it along to me?
16   A.  Oh, sure. Sure. I can do it with a more
17   current one.
18   Q.  Okay. A couple more questions.
19       When you're running a route and the --
20   like in the accountability column here --
21   A.  Okay.
22   Q.  Like in this one we've got total product
23   charged, $14,003.64. That means that this

Page 123

1    account was charged that much in bread or
2    product that week?
3    A.  Exactly. That's how much product we
4    charged that route with before any
5    adjustments were made to it. That's how
6    much our shipping department charged route
7    2069 with.
8    Q.  And those product charges are based on, I
9    guess, the hand-held computer and the
10   information received from the hand-held
11   computer as far as weekly sales from prior
12   weeks?
13       I think that was the testimony from
14   somebody, and correct me if I'm wrong.
15   A.  Ask that question one more time.
16   Q.  The $14,003.64.
17   A.  Okay.
18       MR. HISHTA: Which line is that
19       on?
20       MR. DAVIS: That's on total
21       product charged.
22   Q.  That product charged comes from -- the
23   hand-held computer actually orders the

Page 124

1    product for the next week based on prior
2    sales?
3    A.  The distributor actually orders the
4    product.
5    Q.  Based on prior sales?
6    A.  Based on the prior sales. But the
7    distributor has the ability to adjust --
8    Q.  Adjust it up and down?
9    A.  Exactly.
10   Q.  So the distributor -- the person that was
11   running this route for Mr. Porterfield in
12   January of 2007 --
13       And that was Flowers at that time?
14   A.  Correct.
15   Q.  -- ordered $14,003 worth of product for
16   that route; is that correct?
17   A.  Yes.
18   Q.  And, you know, there's adjustments, relay
19   adjustments, load adjustments, various
20   adjustments. At the end of the week
21   there's a new distributor balance of
22   $1,058.43; is that right?
23   A.  Yes, sir.

Page 125

1  Q.  All right.  What I was trying to find out
2      yesterday is this $1,058.43, what does that
3      represent?
4  A.  That is how much money right now that this
5      particular route would owe us before any
6      discount was taken in effect or any other
7      charges in this third column were
8      reflected.
9  Q.  Now, I understand that you've got
10     authorized charges, $5,996.76.
11 A.  Okay.
12 Q.  And I understand all of the adjustments
13     here, the load adjustments, the relay
14     adjustments.  I understand all of those.  I
15     understand the point of sale data.  Why
16     would this account at the end of the week
17     still owe Flowers 1,058.43?  Would this
18     driver that's running it have $1,058 worth
19     of bread in his truck?
20 A.  No, sir, he wouldn't.  A lot of this is
21     going to be inventory.  Okay.  What you've
22     got to consider here, now, this number here
23     on the point of sale and the revaluation

Page 126

1      variance is based off the previous week;
2      okay?
3          This is week two.  Okay.  Charged him
4      $14,000 this week -- or he -- the route was
5      charged with $14,000 worth of product that
6      week.  All right.  This week he put in
7      $13,000 worth of product; okay?  So he put
8      in less product that week.  But he's
9      receiving credit here based on what he put
10     in the store this week.
11 Q.  I understand.
12 A.  So that number is going to fluctuate from
13     week to week.
14 Q.  So --
15 A.  Now, if you -- let me clarify this too
16     because I see what you're asking.
17         Non-pay by scan, that number right
18     there would represent cash collected, truck
19     stock, or any customer that you did not
20     collect from.  That number -- that would be
21     correct in a non-pay by scan situation.
22     But a non-pay by scan you can't -- that's
23     not going to be true because you're a week

Page 127

1      behind with this right here with your point
2      of sale.
3  Q.  So basically I think what you're telling me
4      is -- and correct me -- is all of this
5      would be inventory that's in a store
6      somewhere.  It's not on the truck -- or
7      could it be?
8  A.  No.  It would -- it could be, yes, but I
9      can't -- you cannot look at that and say
10     that it's on the truck just by looking at
11     that.
12 Q.  It could be -- I think we talked about this
13     yesterday.  It could be cash sales --
14 A.  It could be.
15 Q.  -- and whoever is running the route hasn't
16     given the cash money back to Flowers yet.
17     But at this time Flowers was running the
18     route.
19 A.  I'm not going to agree to that about -- to
20     that statement.
21 Q.  Then it couldn't be cash sales on --
22 A.  It could be cash.  It could be cash.  It
23     could be truck stock.  It could be product

Page 128

1      that was not charged -- product that the
2      distributor sold but had not collected
3      money from yet.  And it's also the
4      difference, too -- like I say, you're
5      running a week behind.
6  Q.  On point of sale data?
7  A.  On point of sale data.
8  Q.  So some of it could be point of sale data?
9  A.  No.
10 Q.  Inventory?
11 A.  Some of it could be inventory.  But what
12     you've got to remember, you come back down
13     here and you're going to receive credit
14     down here for your last week's inventory
15     that was in the store on Saturday.  So that
16     helps clear up some of that.  You just
17     don't see it here; okay?
18         And then you're also going to receive
19     credit for your current week's delivery
20     tickets which also helps on this number, on
21     the new distributor balance.
22 Q.  Ideally what should the distributor balance
23     be under the accountability column every

Deposition of Michael Lord                                          July 17, 2007

Page 129

1  week?
2  A.  It's all relative.  It depends on how many
3     cash stops you have -- or not necessarily
4     how many cash stops you have.  It depends
5     on how much cash you collect on the route
6     versus what your authorized charges are and
7     versus what your pay by scan accounts are.
8     So that's all relative.
9  Q.  Do we know in this account here,
10     Mr. Porterfield's account, the person that
11     was running it -- how many cash stops that
12     this made up on this particular week?
13  A.  Do I know or is there any way to --
14  Q.  Is there any way to look at this and tell?
15  A.  There's no way of looking at this statement
16     and telling how many cash stops are on it.
17  Q.  Is there any way to look at the statement
18     and tell what part of this $1,058.43 is in
19     inventory in some store somewhere?
20         MR. HISHTA:  Just by looking at
21     it?
22  Q.  By looking at these documents.
23  A.  For me just to look at that right there,

Page 130

1     no, there's no way of telling you.  There
2     may be some other way of doing some other
3     adding, subtracting of numbers.
4  Q.  But looking at these documents sitting here
5     today, is there any way that you can tell
6     me --
7  A.  I can't, no, sir.
8  Q.  -- how that $1,058.43 is determined or is
9     calculated?
10  A.  Well, I told you.  It's based on -- it's
11     based on his point of sale data.  I mean,
12     it's -- it's all going from what happened
13     the previous week.  So right there he owes
14     us $1,058.
15  Q.  So if you look back at the previous week
16     and you show me where $1058.43 worth of
17     inventory went into a store --
18  A.  Not from this number right here, no.  Not
19     from that number, no, you can't.
20         MR. HISHTA:  Just for record
21     purposes, I don't think he
22     ever characterized the 1058.43
23     as an inventory number.  I

Page 131

1     mean, correct me if I'm wrong.
2  Q.  It's not an inventory number?
3  A.  No.  No, it is not an --
4  Q.  I thought you said it could be some product
5     that was in inventory.
6  A.  It could be.  It could be.  It could be
7     several things.
8  Q.  It could be several things.  It could be
9     cash sales?
10  A.  Right.
11  Q.  Is there any way -- and you don't know what
12     part of this could be cash sales or not
13     part of cash sales?
14  A.  Not just by looking at that right now.
15  Q.  But Flowers was actually collecting the
16     cash at this point in time?
17  A.  Whatever cash was collected on that route
18     either went back into the truck to pay for
19     the fuel in it, and if there was anything
20     left over, it was sent in and applied
21     towards this territory.
22  Q.  Okay.
23  A.  There was very little cash collected on

Page 132

1     this route.  Now, how much of it, I
2     couldn't give you an exact number.  The
3     truth be known, we've had to run fuel on
4     our expense and put in the truck if the
5     truth be known.
6  Q.  The truck rental expense shows 333.68 --
7  A.  Yes, sir.
8  Q.  -- a week.  And at some points it shows
9     667.38.
10  A.  When Wal-Mart opened up, we started
11     charging him for two trucks.  Because we
12     had to have two trucks to pull the route
13     and it was taking two people to pull the
14     route.  So we charged him for two trucks.
15  Q.  So two people were --
16  A.  We didn't charge him for two people, but we
17     charged him for two trucks.
18  Q.  So was one person driving one truck for 40
19     hours and then going back and getting the
20     other truck and driving it for 40 hours?
21  A.  I don't know how many hours they worked.
22     But there was two people pulling the route.
23  Q.  Two people driving two separate trucks?

Deposition of Michael Lord                                July 17, 2007

Page 133

1    A.   Two people taking care of the route.
2    Q.   And so you charged Mr. Porterfield for two
3         trucks.  And so the 667.38 represents two
4         trucks?
5    A.   That's correct.
6    Q.   And when it says like 741.60 --
7    A.   That could have been some gas that we had
8         to put in.  I don't know off the top of my
9         head.
10        MR. DAVIS:  Okay.  That's all the
11             questions I've got.
12        MR. HISHTA:  Let me just ask a few
13             follow-up questions just.
14             EXAMINATION
15   BY MR. HISHTA:
16   Q.   For record clarification purposes, we're
17        looking at FBO000974.  Mr. Lord, when in a
18        non-pay by scan account -- when does an
19        accounts receivable arise?
20   A.   When a ticket is generated.  Because the
21        back door person signs off on that ticket
22        and accepts it.
23   Q.   And when that occurs, when does the

Page 134

1         distributor get credit for that accounts
2         receivable?
3    A.   He gets credit for it on his next week's
4         statement that he receives.  He gets credit
5         for it that week, the current week that
6         he's running the territory.
7    Q.   And looking at FBO000974, is that accounts
8         receivable figure reflected in the
9         authorized charges of $5,996.76?
10   A.   That's all accounts but pay by scan
11        accounts.
12   Q.   Correct.
13   A.   It does not reflect pay by scan accounts.
14   Q.   Correct.  That reflects -- that's
15        authorized charges to non-pay by scan
16        accounts?
17   A.   Correct.
18   Q.   And the distributor gets full credit for
19        those tickets?
20   A.   Exactly.
21   Q.   In a pay by scan account, when does the
22        accounts receivable arise?
23   A.   When the product goes through the cash

Page 135

1         register.
2    Q.   And where on the document that we are
3         looking at is the accounts receivable shown
4         for a pay by scan account?
5    A.   Under pay by -- excuse me.  Under point of
6         sale data.
7    Q.   And that number -- and that number for this
8         particular week is $5,724.81?
9    A.   Correct.
10   Q.   And is that number the amount of money that
11        Flowers will ultimately collect from a pay
12        by scan or pay by scan accounts for that
13        particular week?
14   A.   That is correct.
15   Q.   And for this particular week the
16        distributor is actually receiving credit
17        above what the accounts receivable is --
18   A.   He's receiving credit for his shrink for
19        that week.
20        MR. HISHTA:  No further questions.
21        MR. DAVIS:  That's it.
22        (Deposition concluded at
23        approximately 9:50 a.m.)

Page 136

1         * * * * * * * * * *
2         FURTHER DEPONENT SAITH NOT
3         * * * * * * * * * *
4         REPORTER'S CERTIFICATE
5    STATE OF ALABAMA:
6    MONTGOMERY COUNTY:
7         I, Tracye Sadler, Certified Shorthand
8    Reporter and Commissioner for the State of Alabama
9    at Large, do hereby certify that I reported the
10   deposition of:
11        MICHAEL LORD - VOLUME II
12   Who was duly sworn by me to speak the truth, the
13   whole truth and nothing but the truth, in the
14   matter of:
15        HENRY PORTERFIELD,
16        Plaintiff,
17        vs.
18        FLOWERS BAKING COMPANY OF
19        OPELIKA, LLC,
20        Defendant.
21   IN THE UNITED STATES DISTRICT COURT
22   FOR THE MIDDLE DISTRICT OF ALABAMA
23   NORTHERN DIVISION

July 17, 2007



Page 137

1        Case Number 2:05-CV-937-MEF
2   on July 17, 2007.
3        The foregoing 48 computer-printed pages
4   contain a true and correct transcript of the
5   examination of said witness by counsel for the
6   parties set out herein.  The reading and signing of
7   same is hereby not waived.
8        I further certify that I am neither of
9   kin nor of counsel to the parties to said cause nor
10  in any manner interested in the results thereof.
11       This 24th day of July 2007.
12
13
14  _____
        Tracye Sadler, Certified
15      Shorthand Reporter and
        Commissioner for the State
16      of Alabama at Large
17
18
19
20
21
22
23

July 25, 2007

Mr. Michael Lord
c/o Ms. Sandra B. Reiss
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
One Federal Place, Suite 1000
1819 Fifth Avenue North
Birmingham, Alabama  35203

In re:  Henry Porterfield vs. Flowers Baking Company

Dear Mr. Lord:

Enclosed is a copy of the transcript of your
deposition taken on July 17, 2007.  Please read the
transcript and make any corrections on the correction
sheet provided specifying the page and line number of
each correction.

You will find the original signature page attached to
the front of the transcript.  Even if there are no
corrections, please sign the original signature page
and have your signature notarized.
Please return the signature page, correction sheet
and transcript within thirty days.  The list of
corrections will be attached to the original
deposition and all parties will be notified of any
changes.
Thank you for your prompt attention to this matter.
Sincerely,

Tracye Sadler Blackwell
Certified Shorthand Reporter

cc: Mr. Greg L. Davis, Ms. Sandra B. Reiss

Page 138

1        * * * * * * * * * * * * *
2            WITNESS SIGNATURE PAGE
3        * * * * * * * * * * * * *
4
5   In Re:  Henry Porterfield vs. Flowers Baking Company
6
7        I, MICHAEL LORD, hereby certify that I have
8   read the foregoing transcript of my deposition
9   given on July 17, 2007, and it is a true and
10  correct transcript of the testimony given by me at
11  the time and place stated with the corrections, if
12  any, and the reasons therefor noted on a separate
13  sheet of paper and attached hereto.
14
15
16  _____
        MICHAEL LORD
17       SWORN TO AND SUBSCRIBED before me this _____
18  day of _____, 2007.
19
        _____
        NOTARY PUBLIC
20
        MY COMMISSION EXPIRES:
21
22  _____
23

13 (Pages 137 to 139)

Deposition of Michael Lord

July 17, 2007

Page 1

**A**

ability 124:7
able 119:19 121:8
about 92:23 108:14
  111:19 113:2 114:10
  117:7,8 120:15
  127:12,19
above 135:17
absorbing 113:10
accepts 133:22
account 97:3,4 103:3
  104:21 105:3 109:16
  109:21 121:3 123:1
  125:16 129:9,10
  133:18 134:21 135:4
accountability 94:21
  95:1,3,5,19 122:20
  128:23
accounting 95:11
  119:18
accounts 129:7 133:19
  134:1,7,10,11,13,16
  134:22 135:3,12,17
across 96:16
ACTION 89:8
actual 100:4
actually 94:17 98:9
  101:22 110:14 119:5
  120:8 121:14 123:23
  124:3 131:15 135:16
add 96:19 107:6 108:11
  112:22 116:17
  117:18
added 113:12 117:1
adding 130:3
additional 96:10
adjust 124:7,8
adjustment 116:11
adjustments 123:5
  124:18,19,19,20
  125:12,13,14
advance 97:21 100:19
  110:18
advantage 114:3,6
after 92:13 121:20
again 100:18 115:3
  122:12
ago 121:16,17
agree 127:19
agreed 91:2,16,23
agreement 89:17
ahead 97:17 106:22
Alabama 89:3,19,21
  90:6,11 91:8 136:5,8
  136:22 137:16 139:5
Alexander 90:14
allow 113:14,14
allows 112:18
along 122:15
always 110:23

**A** (column 2)

amount 95:12 103:17
  135:10
another 120:14,16
anticipate 110:19
anything 100:15 104:4
  104:9 131:19
anywhere 112:17
APPEARANCES 90:1
applied 131:20
approximately 89:22
  135:23
arise 133:19 134:22
arithmetic 110:20
arithmetically 111:12
asked 112:14
asking 108:6 126:16
attached 138:13 139:11
  139:15
attention 139:17
Attorneys 90:5,10
authorized 103:10
  109:4,17,21 125:10
  129:6 134:9,15
automatically 103:15
Avenue 90:11 139:5
average 121:12
aware 104:10
away 107:2 121:8
a.m 89:22 135:23

**B**

B 90:9 139:3,22
back 99:2 102:22
  115:21 116:10 117:4
  119:13,21 120:17
  127:16 128:12
  130:15 131:18
  132:19 133:21
Baking 89:9 136:18
  138:5 139:6
balance 94:15 95:15
  96:18,19 102:14
  103:16 115:22
  124:21 128:21,22
based 96:8 99:10 123:8
  124:1,5,6 126:1,9
  130:10,11
basically 117:20 127:3
batch 108:13
before 89:17 91:6
  98:16 107:4,5 108:20
  123:4 125:5 138:17
beginning 111:6
behalf 90:3,7 120:10
behind 99:19,20
  100:17 112:12 127:1
  128:5
being 97:4
believe 105:2 120:12
  120:18

**B** (column 3)

beneath 97:1
better 119:15,18,19
between 91:3,17 92:1
bid 121:9
big 112,16,17
Birmingham 90:11
  139:5
Blackwell 139:20
blunt 99:7 101:8
bottom 95:4 117:23
Brad 90:14
brand 121:7,19 122:3
branded 121:6
bread 123:1 125:19
break 121:1
breaks 121:3,4
bring 97:15
brings 95:3
bulk 103:6,11
buns 103:12
business 97:2,10 121:9

**C**

calculate 109:6
calculated 130:9
calculator 105:19
call 113:10
calls 113:18
came 120:16,19,22
  121:11
care 133:1
carry 101:10,12,18
  102:3 112:2,3
carrying 101:17
case 91:18,20 103:8,20
  109:23 110:1 113:7
  114:16 137:1
cases 113:6
cash 126:18 127:13,16
  127:21,22,22 129:3,4
  129:5,11,16 131:9,12
  131:13,16,17,23
  134:23
cause 137:9
cc 139:22
CERTIFICATE 136:4
Certified 89:18 91:7
  136:7 137:14 139:20
certify 136:9 137:8
  138:7
change 103:17
changed 119:7,11
changes 139:16
characterized 130:22
charge 113:14 115:21
  116:22 117:4,21
  118:12,15,18 119:1
  119:13,17 132:16
charged 96:8 97:3,22
  104:2 109:14,15

112:19 120:4,8
  122:23 123:1,4,6,21
  123:22 126:3,5 128:1
  132:14,17 133:2
charges 116:13 117:22
  120:2 123:8 125:7,10
  129:6 134:9,15
charging 114:4 119:8,8
  119:21,23 132:11
check 114:8,8
Civil 89:8 91:5
clarification 133:16
clarify 126:15
class 121:4
classes 121:8
clear 117:17 128:16
collect 126:20 129:5
  135:11
collected 126:18 128:2
  131:17,23
collecting 131:15
column 95:5,21 122:20
  125:7 128:23
columns 94:18
come 106:19 112:11
  128:12
comes 96:20 97:15
  107:6 123:22
commencing 89:21
commission 91:9
  138:20
Commissioner 89:19
  91:7 136:8 137:15
company 89:9 120:5
  136:18 138:5 139:6
complicated 115:6
compute 118:7
computer 123:9,11,23
computer-printed
  137:3
concluded 135:22
conclusion 113:19
confusing 115:4
consider 125:22
contain 137:4
continues 112:9
continuing 112:7
contract 112:17 113:12
  113:13,13,22
convolute 110:10
copy 93:7 139:8
correct 95:6,20 98:3
  99:5,5 102:7 104:14
  104:16,17 105:17
  106:4,13,14 115:12
  116:4,15 117:14,15
  120:21 121:23
  123:14 124:14,16
  126:21 127:4 131:1
  133:5 134:12,14,17

135:9,14 137:4
  138:10
corrected 111:10
correction 139:9,10,14
corrections 138:11
  139:9,12,15
counsel 91:3,17 92:22
  137:5,9
counted 98:15,19,21
  99:1 105:5
counting 114:5
COUNTY 136:6
couple 120:3 122:18
COURT 89:2 92:7
  136:21
covered 92:20 113:1,23
credit 99:6,10,15,16,21
  99:23 100:10,14,15
  101:1,4,6,21,21
  103:14 107:20,22,23
  108:5,23 109:1,4,7
  109:11,12,13,22
  110:18 111:22 115:9
  115:11,13,14,19,22
  115:23 116:1,5,7,8,9
  117:13,18,19 126:9
  128:13,19 134:1,3,4
  134:18 135:16,18
credits 98:6,8
curious 121:23 122:2
current 97:23 100:2,9
  105:16 122:17
  128:19 134:5
customer 126:19
c/o 139:3

**D**

data 99:19 106:11
  109:2 125:15 128:6,7
  128:8 130:11 135:6
date 98:17 106:6
  109:19 119:23
  121:18
dates 100:4
Davis 90:4,4,20 92:10
  92:17 93:9 110:21
  111:3,14 117:11
  123:20 133:10
  135:21 139:22
day 98:22 114:20
  137:11 138:18
days 139:14
DEAKINS 90:9 139:4
Dear 139:7
deciphering 93:13
deeper 103:23
Defendant 89:11 90:7
  136:20
delivered 105:12 107:5
delivery 100:3 128:19

Deposition of Michael Lord                                                July 17, 2007

Page 2

department 123:6
depends 129:2,4
DEPONENT 136:2
deposition 89:16 90:22
  91:4,6,13,18 92:2,21
  121:21,22 135:22
  136:10 138:8 139:9
  139:15
describing 98:9
determine 111:17
determined 104:22
  130:8
difference 103:21
  108:17 114:16 128:4
different 111:4
difficulty 93:12
digging 103:23 110:6
discount 95:21 96:3,13
  96:14 125:6
distributor 95:15 96:17
  96:18 100:19 102:14
  103:2,7 109:10
  111:23 112:18 113:4
  113:9 114:19 119:12
  119:15 124:3,7,10,21
  128:2,21,22 134:1,18
  135:16
distributors 99:17
  101:9 113:2,15 114:11
distributor's 114:3
DISTRICT 89:2,3
  136:21,22
divide 116:20
DIVISION 89:4 136:23
document 93:18 135:2
documents 104:5,7
  129:22 130:4
doing 119:14 130:2
dollars 117:3
done 106:20 112:6
  119:7
door 133:21
down 93:11 94:17,18
  94:23 95:4,23 97:15
  98:5 100:1 106:6,10
  113:23 121:4,4 124:8
  128:12,14
downs 121:1
dozens 110:22
Drive 90:5
driver 125:18
driving 132:18,20,23
duly 92:13 136:12
during 98:4 105:14,15
  105:16

                E
each 108:10 111:3,4
  117:19 139:10
earnings 95:22,23

easiest 103:3
eat 109:10
eating 113:5,6,8,9
  120:5,11
effect 125:6
eight 118:14
either 91:14,20 110:10
  122:13 131:18
eleven 118:16
Enclosed 139:8
end 119:6 124:20
  125:16
ending 115:1
ends 110:17
equal 115:2
error 110:16
Even 99:13 139:12
ever 130:22
every 116:14 118:2,9
  118:10,18 119:9
  121:3 128:23
everything 106:20
  114:4
evidence 91:13
exact 119:22 121:18
  132:2
exactly 93:23 94:3
  105:6 108:3 114:4
  118:7 121:14 123:3
  124:9 134:20
examination 90:18
  92:16 133:14 137:5
example 109:19 110:11
examples 111:8
except 120:11
excuse 135:5
Exhibit 93:3 120:17
exhibits 90:22
expecting 110:12
expense 132:4,6
expenses 97:2,2,10
EXPIRES 138:20
explain 93:16
explanation 110:3,8
  111:16
extent 113:18

                F
factors 110:7
far 114:14 118:20
  120:6 123:11
FBO000908 93:5
FBO000974 133:17
  134:7
Federal 90:10 91:5
  139:4
few 111:7 133:12
fifth 90:11 116:10,14
  117:20 118:12 119:3
  139:5

figure 93:23 94:14 95:7
  95:12,23 97:16,18,19
  98:2 102:13,20
  111:18 114:11,14
  116:21,23 120:19,22
  121:10 134:8
figures 93:17 94:12
  95:2 96:20 97:13
  105:19,20 110:4
  111:20 121:15 122:5
  122:9
filing 91:18,22
find 125:1 139:11
fine 92:10 93:9
first 92:13 119:10
five 116:18 118:13
flip 103:15
flipping 101:14
flow 103:13 118:4
Flowers 89:9 96:1
  104:15,21 113:2,4,14
  124:13 125:17
  127:16,17 131:15
  135:11 136:18 138:5
  139:6
fluctuate 126:12
following 100:16 101:1
  101:5,23 107:8
follows 92:15
follow-up 133:13
foregoing 137:3 138:8
form 91:10
formality 91:9
forward 94:15 101:17
  101:18 102:5 103:16
four 116:6,7,9,18,19,20
  116:21 117:1,7,8,17
  118:11,18
fourth 115:20
four-week 117:3
from 92:19 94:15 95:11
  96:6,7 100:5,5,20
  103:20 106:14,16
  107:15 110:15,19
  112:1,8 114:18
  120:20 123:10,11,13
  123:22 126:12,20
  128:3 130:12,18,19
  135:11
front 139:12
fuel 131:19 132:3
full 99:8 101:8,8
  134:18
further 91:16,23
  135:20 136:2 137:8

                G
gas 133:7
gave 107:20,22 122:4,4
generated 100:7

133:20
gets 116:1,5,7,8,9
  117:19 134:3,4,18
getting 110:17 115:4
  132:19
give 99:21 101:5
  108:20,23 110:5,8
  115:13,22,23 122:14
  132:2
given 127:16 138:9,10
gives 100:3
giving 99:6,10,14
  115:14,19
go 92:20 96:16 97:17
  99:18 101:9 106:7,10
  108:10,18 109:2
  110:21 111:5 116:10
  118:7
goes 118:14 134:23
going 92:18 93:2,4
  98:19 100:23 101:4
  101:11,22 103:20
  106:2,23 109:5,8
  112:6,10 113:3 114:1
  115:20 117:4,21,23
  118:1,2,9,15,17
  125:21 126:12,23
  127:19 128:13,18
  130:12 132:19
gone 99:13 100:12
good 94:9,10 122:6
Greg 90:4,4 139:22
guess 93:13 123:9

                H
Halcyon 90:5
half 113:5
handle 113:3
hand-held 100:8 123:9
  123:10,23
Hang 106:20
happened 130:12
happens 116:14
having 92:13 93:12
  100:20 114:8
head 133:9
help 101:12
helped 111:18
helps 128:16,20
Henry 89:6 90:14
  136:15 138:5 139:6
hereto 91:21 92:1
  138:13
he'll 92:9
him 96:22 99:6,10,14
  99:17,21 100:20
  101:5,7 107:20,22
  112:2 115:13,14,19
  115:21,22,22,23
  117:4,21 119:13,16

119:17 120:4,8 126:3
  132:11,14,16,17
Hishta 90:8,20 92:9
  93:7 110:9 111:5
  113:17 117:6,12
  123:18 129:20
  130:20 133:12,15
  135:20
hit 119:12,16
Hold 115:2
hours 114:9 132:19,20
  132:21
hundred 117:3 122:10

                I
Ideally 128:22
II 89:13 136:11
impact 119:12
INDEX 90:18
information 123:10
informed 92:22
Inn 89:20
instance 103:11 120:12
  121:1
instances 120:7
instead 101:17
interested 137:10
introduced 91:19
inventoried 114:19,20
inventory 93:1 97:21
  98:7,12,15,18,23
  99:3,20 100:21 101:3
  101:8,13 104:18,19
  104:23 105:4,8 107:4
  107:11,19 109:7
  110:13 112:1 115:1
  115:15,17,18 125:21
  127:5 128:10,11,14
  129:19 130:17,23
  131:2,5
invoices 97:22
issue 111:9
item 96:16 99:1,1 104:8
  104:10,19 109:9
  116:12 120:16 121:5

                J
January 124:12
Jerry 122:5
July 89:21 137:2,11
  138:9 139:1,9
jumping 106:22
just 92:19 93:2,4 94:5
  99:16,23 100:18
  102:2,17,20 108:7,7
  109:10,11 111:7,19
  112:3 115:7 116:23
  117:1,17 118:6
  121:18,23 122:1,5
  127:10 128:16

Deposition of Michael Lord

July 17, 2007

129:20,23 130:20
  131:14 133:12,13

_____

**K**

**keep** 100:20 111:21
  119:19
**Kevin** 90:8
**kick** 103:13 109:8
**kin** 137:9
**knew** 110:3 118:6
**know** 98:19 103:4,22
  106:15,22 107:3,7
  110:1,2,14,16 112:17
  113:1,4,20 115:4
  118:19 121:5,14
  124:18 129:9,13
  131:11 132:21 133:8
**knowledgeable** 92:23
**known** 132:3,5

_____

**L**

**L** 90:4,4 139:22
**label** 121:9
**Large** 89:19 91:8 136:9
  137:16
**last** 92:19 121:21
  128:14
**Law** 90:4,5,10
**lawyer** 122:14
**left** 107:10,19 131:20
**legal** 113:18
**less** 96:9,9,12 100:2
  115:17,18 126:8
**let** 94:5 101:23 102:22
  106:21 119:5 126:15
  133:12
**let's** 93:20 94:5 98:8
  102:2 103:4 107:15
  115:7
**like** 101:11 106:23
  122:5,20,22 128:4
  133:6
**line** 96:16 98:5,13
  100:1 103:12 104:8
  104:10,19 116:12
  123:18 139:10
**list** 139:14
**little** 131:23
**LLC** 89:10 136:19
**load** 96:9 124:19
  125:13
**look** 93:10 101:11
  102:8 104:18 106:4,5
  108:11 127:9 129:14
  129:17,23 130:15
**looking** 93:3 94:4 99:8
  110:6 118:11 120:16
  127:10 129:15,20,22
  130:4 131:14 133:17
  134:7 135:3

**Lord** 89:16 91:4 92:12
  92:18 111:18 133:17
  136:11 138:7,16
  139:3,7
**lot** 103:5 125:20

_____

**M**

**made** 91:11 96:3 100:4
  122:11 123:5 129:12
**majority** 113:3
**make** 99:16 100:19
  101:6 111:23 112:12
  112:13 115:5 116:11
  118:6 139:9
**manner** 91:20 137:10
**many** 129:2,4,11,16
  132:21
**marked** 90:22
**match** 111:20
**material** 105:12
**matter** 136:14 139:17
**may** 91:6,11,13,19
  112:16 130:2
**maybe** 111:7 120:7
**mean** 95:9 114:2,5
  118:22 122:11,12
  130:11 131:1
**means** 104:20 105:7
  106:11 115:14
  122:23
**mentioned** 113:22
**messing** 114:22
**Michael** 89:16 91:4
  92:12 136:11 138:7
  138:16 139:3
**MIDDLE** 89:3 136:22
**mind** 111:21
**minus** 106:14 107:15
  115:11
**minuses** 95:3
**minute** 102:22 114:22
**miscounting** 110:16
**model** 110:20
**modified** 113:13
**money** 99:15 101:19,22
  125:4 127:16 128:3
  135:10
**Montgomery** 90:6
  136:6
**month** 121:17
**more** 96:11 102:13
  107:22,23 108:4
  110:17 115:15
  122:16,18 123:15
**most** 92:23 99:17 101:9
  120:5
**moving** 118:4
**much** 105:4 114:6
  123:1,3,6 125:4
  129:5 132:1

**myself** 114:23 115:5
  121:23 122:2

_____

**N**

**name** 120:16
**NASH** 90:9 139:4
**necessarily** 129:3
**need** 91:11 93:10
  106:21 121:5
**negative** 95:7,12
**neither** 137:8
**net** 120:23
**never** 108:11 112:10
**new** 95:14 96:17,18
  124:21 128:21
**next** 93:21 95:21 98:5
  98:10,13 100:1
  101:14 102:6,8 106:2
  106:5,6,7 124:1
  134:3
**Nine** 118:16
**ninth** 118:14
**non-pay** 126:17,21,22
  133:18 134:15
**North** 90:11 139:5
**NORTHERN** 89:4
  136:23
**notarized** 139:13
**NOTARY** 138:19
**noted** 138:12
**nothing** 92:14 104:7
  113:12,21,21 136:13
**notified** 139:15
**number** 93:3 103:12
  105:6 107:14 117:10
  119:14 120:17
  125:22 126:12,17,20
  128:20 130:18,19,23
  131:2 132:2 135:7,7
  135:10 137:1 139:10
**numbers** 108:11,14,15
  108:17 130:3

_____

**O**

**Objection** 113:17
**objections** 91:9,10
**occurs** 133:23
**October** 100:5,6
  105:10
**off** 111:1 112:5 126:1
  133:8,21
**offered** 91:13
**OFFICES** 90:4
**OGLETREE** 90:9
  139:4
**oh** 97:17 122:16
**okay** 93:6,15,22 94:7,9
  94:13,17,20 95:19
  97:19 98:9 100:14
  101:23 102:21 103:6

105:21 106:1,18,23
  107:3,20 114:13
  116:2 118:6 119:2
  121:5 122:18,21
  123:17 125:11,21
  126:2,3,7 128:17
  131:22 133:10
**once** 119:9,14
**one** 90:10 93:10,21
  102:6,8,17,23 105:3
  105:12 108:7,10,20
  110:5 112:5 116:1
  118:10 119:13,15,16
  119:16,17,17 120:11
  120:12,13 122:10,13
  122:17,22 123:15
  132:18,18 139:4
**ongoing** 118:4
**only** 102:23 105:3
  108:19 110:3,5,7
  120:3,6
**Opelika** 89:10,20
  136:19
**opened** 132:10
**ordered** 124:15
**orders** 123:23 124:3
**original** 139:11,12,15
**other** 91:10,14,20
  110:7 112:5 114:10
  120:13 125:6 130:2,2
  132:20
**out** 93:4 96:12 97:15
  101:9,12 102:17,20
  103:14 104:21 109:8
  111:19 112:7,11
  114:5,8 115:22
  116:23 118:3 125:1
  137:6
**over** 92:20 95:21 97:7
  101:14 112:8 131:20
**owe** 95:18 96:2,22 98:1
  98:2 99:22 125:5,17
**owed** 95:13
**owes** 95:17 97:20
  130:13

_____

**P**

**P** 90:8
**package** 103:6
**page** 93:4 94:6,11,17
  94:19 97:14 101:15
  138:2 139:10,11,12
  139:14
**pages** 93:14 137:3
**paid** 99:3
**paper** 138:13
**Park** 90:5
**part** 106:3 129:18
  131:12,13
**particular** 93:17 95:14

97:3,4 100:8 104:12
  105:14 125:5 129:12
  135:8,13,15
**particulars** 92:19
**parties** 91:3,17 92:1
  137:6,9 139:15
**party** 91:14,20
**pass** 122:14
**pay** 93:1,16 97:21,22
  98:4,6,8,12 99:9,18
  100:3,13,20,23 103:3
  104:18 105:1 108:15
  112:7 114:7,11
  116:13,22 117:22
  118:23 120:1 129:7
  131:18 134:10,13,21
  135:4,5,11,12
**people** 132:13,15,16,22
  132:23 133:1
**percent** 113:8,9 115:21
  117:5 122:11
**period** 114:18 117:3
  119:6,14,22 120:1
**person** 92:23 98:21
  104:20 124:10
  129:10 132:18
  133:21
**pick** 93:2
**picked** 102:17 108:7
**place** 90:10 138:11
  139:4
**Plaintiff** 89:7 90:3
  136:16
**Plaintiff's** 93:3 120:17
**please** 139:9,12,14
**pluses** 95:2
**point** 99:19 106:11
  109:1 125:15,23
  127:1 128:6,7,8
  130:11 131:16 135:5
**points** 132:8
**Porterfield** 89:6 90:14
  95:18 96:2 97:20
  98:20 104:16 124:11
  133:2 136:15 138:5
  139:6
**Porterfield's** 120:2
  129:10
**positive** 107:12
**possible** 119:21
**PRESENT** 90:13
**pretty** 97:6
**previous** 94:16 99:12
  126:1 130:13,15
**price** 120:19
**prior** 98:12 123:11
  124:1,5,6
**private** 121:9
**probably** 121:20
  122:10

Deposition of Michael Lord

July 17, 2007

Page 4

**problem** 97:8
**Procedure** 91:5
**product** 96:4,5,9
  100:11,12 103:2,10
  103:18 107:4,10
  108:21 109:20
  122:22 123:2,3,8,21
  123:22 124:1,4,15
  126:5,7,8 127:23
  128:1 131:4 134:23
**products** 103:5 104:2
**prompt** 139:17
**provided** 91:14,21
  139:10
**PUBLIC** 138:19
**pull** 93:4 132:12,13
**pulled** 121:15,15
**pulling** 98:22 120:10
  132:22
**pulls** 121:2
**purpose** 91:14
**purposes** 130:21
  133:16
**pursuant** 89:17 91:4
**put** 100:22 108:21
  109:16,20 126:6,7,9
  132:4 133:8
**puts** 103:2

**Q**

**quarter** 119:9
**question** 91:11 106:21
  114:10 123:15
**questions** 91:10 122:18
  133:11,13 135:20

**R**

**ran** 121:13
**random** 102:17 108:7
**re** 138:5 139:6
**read** 92:9 138:8 139:9
**reading** 94:23 137:6
**really** 101:20 102:15
  102:16 103:22
**reason** 102:23 108:4,6
  108:19,19 122:1
**reasons** 102:21 138:12
**receivable** 133:19
  134:2,8,22 135:3,17
**receive** 100:15,23
  101:4,22 103:14
  117:23 118:1 128:13
  128:18
**received** 100:10,13
  107:8 108:1,2 123:10
**receives** 134:4
**receiving** 117:13 126:9
  135:16,18
**record** 110:10 130:20
  133:16

**reflect** 134:13
**reflected** 125:8 134:8
**reflects** 134:14
**regarding** 108:15
**regardless** 91:21
**register** 99:14 109:3
  135:1
**registers** 114:17
**Reiss** 90:9 139:3,22
**relates** 93:20
**relative** 129:2,8
**relay** 124:18 125:13
**remember** 119:22
  121:17 128:12
**rental** 132:6
**report** 120:23 121:7
  122:4,8,13
**reported** 136:9
**Reporter** 89:18 91:7
  92:7 136:8 137:15
  139:20
**REPORTER'S** 136:4
**represent** 114:14 125:3
  126:18
**representing** 91:3,17
**represents** 133:3
**repurchase** 120:19
**reserved** 91:12
**response** 107:12
**restaurant** 103:5
**results** 137:10
**return** 139:14
**revaluation** 112:14
  115:8 116:16 117:9
  117:18 118:1 125:23
**right** 93:19 94:2,22
  95:10,13,14,18 96:15
  96:22 97:1,9,13,19
  97:20,23 98:11 99:7
  99:21 101:6,14,19
  102:10,12 103:1,9,21
  105:1 106:6,9,9
  107:1,2,14,15,18,21
  108:9,12 111:21
  114:4 115:2,7,10
  116:3,13 118:9,21,22
  124:22 125:1,4 126:6
  126:17 127:1 129:23
  130:13,18 131:10,14
**roll** 112:10
**rolling** 112:8
**rolls** 112:8
**room** 99:2
**route** 98:20,22 104:15
  120:2,9 121:19
  122:19 123:4,6
  124:11,16 125:5
  126:4 127:15,18
  129:5 131:17 132:1
  132:12,14,22 133:1

**Rules** 91:5
**ruling** 91:12
**run** 111:7,11 122:3,13
  132:3
**running** 98:20 104:15
  104:21 120:9 121:19
  122:3,19 124:11
  125:18 127:15,17
  128:5 129:11 134:6

**S**

**Sadler** 89:18 91:6
  136:7 137:14 139:20
**SAITH** 136:2
**sale** 99:19 106:11 109:1
  125:15,23 127:2
  128:6,7,8 130:11
  135:6
**sales** 96:12 107:8
  120:23 121:6,6,9,19
  122:3 123:11 124:2,5
  124:6 127:13,21
  131:9,12,13
**same** 91:22 101:2
  137:7
**Sandra** 90:9 139:3,22
**sat** 113:23
**Saturday** 98:16 101:3
  105:9,11 114:21
  115:1 128:15
**saves** 114:7
**saying** 109:23
**says** 100:2 133:6
**scan** 93:1,17 97:21,22
  98:5,6,8,12 99:18
  100:3,13 101:1 103:3
  104:18 105:1 108:15
  112:7 114:7,11
  116:13,22 117:22
  119:1 120:2 126:17
  126:21,22 129:7
  133:18 134:10,13,15
  134:21 135:4,12,12
**scenario** 119:4
**scheme** 118:20
**second** 106:21
**see** 94:3 110:23 111:12
  119:5 121:18 126:16
  128:17
**seem** 108:11 110:23
**seemed** 111:8,9
**seen** 120:13
**self-explanatory** 97:6
**sell** 103:5,7,9,11 106:3
**sense** 112:12,13
**sent** 131:20
**separate** 132:23 138:12
**set** 103:12 137:6
**set-in** 122:6
**seven** 118:14

**several** 102:21 121:16
  131:7,8
**sheet** 138:13 139:10,14
**shelf** 99:2 110:13
**shipping** 123:6
**shortage** 96:9
**Shorthand** 89:18 91:7
  136:7 137:15 139:20
**show** 130:16
**shown** 135:3
**shows** 96:22 132:6,8
**shrink** 107:12,13,15
  109:5,6 113:2,3,5,7
  113:22 114:22
  115:19 116:13,22
  117:22 118:13 119:1
  119:8,9 120:4,8
  135:18
**shrinkage** 112:15,19
  113:15 114:11,15
  117:21
**shrinks** 120:6
**side** 97:14
**sign** 139:12
**signature** 92:2 138:2
  139:11,12,13,14
**signing** 137:6
**signs** 133:21
**simple** 115:8
**since** 120:8
**Sincerely** 139:18
**sir** 101:16 112:16
  124:23 125:20 130:7
  132:7
**sitting** 104:4 130:4
**situation** 126:21
**six** 118:13
**SMOAK** 90:9 139:4
**sold** 106:12 121:3
  128:2
**some** 92:20 128:8,11,16
  129:19 130:2,2 131:4
  132:8 133:7
**somebody** 123:14
**something** 109:2
  112:22 121:16
**sometime** 121:20
**somewhere** 127:6
  129:19
**sorry** 102:5
**speak** 92:14 136:12
**specifying** 139:10
**standpoint** 95:11
**start** 93:22 94:5
**started** 119:14,23
  132:10
**starting** 97:14
**State** 89:19 91:8 136:5
  136:8 137:15
**stated** 138:11

**statement** 98:16 105:16
  106:5 127:20 129:15
  129:17 134:4
**STATES** 89:2 136:21
**Statute** 91:15,21
**steady** 118:4
**STEWART** 90:9 139:4
**still** 104:23 111:19
  117:23 122:8 125:17
**stipulated** 91:2,16,23
**stipulation** 89:17
**stipulations** 91:1 92:8
**stock** 126:19 127:23
**stops** 129:3,4,11,16
**store** 99:11 100:21
  104:2 105:1,5,9
  106:2,15 107:3,7,11
  107:19 108:22
  109:20 114:20
  115:15 126:10 127:5
  128:15 129:19
  130:17
**stores** 104:22
**straight** 114:23
**Street** 89:20
**stuff** 92:20
**SUBSCRIBED** 138:17
**subtract** 107:9
**subtracting** 130:3
**Suite** 90:10 139:4
**summary** 93:13
**supposed** 102:3 109:16
**sure** 102:20 112:23
  118:6 122:11,16,16
**sworn** 92:13 136:12
  138:17
**system** 103:13 108:22

**T**

**take** 93:20 96:19 97:13
  98:8 102:2 107:1
  114:9 115:7 116:16
  117:17 120:23 121:8
**taken** 89:16 91:4,6
  125:6 139:9
**taking** 114:5 132:13
  133:1
**talked** 127:12
**talking** 108:14 117:7,8
  120:22 129:14,18
  130:5
**tell** 97:18 104:5,8,11
  120:22 129:14,18
  130:5
**telling** 109:18 127:3
  129:16 130:11
**tells** 98:6,17 121:7
**temporary** 99:6,10,14
  99:16,23 100:18
  101:6,20,21 111:22
  111:23 112:4
**ten** 118:16

Deposition of Michael Lord

July 17, 2007

territory 120:23 121:2
  131:21 134:6
testified 92:15
testimony 123:13
  138:10
Thank 139:17
their 108:23 109:6
  114:6 115:1
themselves 101:10
therefor 138:12
thereof 137:10
thing 101:2 120:14
things 118:20 131:7,8
think 93:22 103:1
  106:6 111:17 120:6
  123:13 127:3,12
  130:21
third 125:7
thirteenth 118:17
thirty 139:14
though 99:13 102:2
thought 131:4
three 116:6 120:7
three-quarters 113:6
through 98:23 99:13
  100:5,7,12 103:13,16
  108:10,18 109:3
  110:22 111:7,11
  114:17 118:8,11
  121:6 134:23
throughout 108:13
ticket 133:20,21
tickets 100:3,4,7
  128:20 134:19
Tiger 89:20
time 91:11,12 92:19
  102:16 104:12,16
  105:3 110:6,8 112:10
  114:8,9,18 117:3
  118:5 119:7,13,17,17
  119:20 121:13
  123:15 124:13
  127:17 131:16
  138:11
times 120:3
today 104:4 130:5
together 96:20 107:6
told 108:20 120:18
  130:10
top 94:6,11 133:8
total 97:10 105:22
  122:22 123:20
towards 131:21
Town 89:20
Tracye 89:17 91:6
  136:7 137:14 139:20
transcript 137:4 138:8
  138:10 139:8,9,12,14
transferred 96:11,12
transfers 96:10,10

trial 91:19
truck 125:19 126:18
  127:6,10,23 131:18
  132:4,6,18,20
trucks 132:11,12,14,17
  132:23 133:3,4
true 126:23 137:4
  138:9
truth 92:14,14,15
  132:3,5 136:12,13,13
try 99:16 100:19 101:6
trying 93:22 102:20
  110:9 111:23 115:5
  116:23 125:1
twelve 118:16
two 94:18 96:19 98:10
  105:18,20 107:6
  116:5 120:7 126:3
  132:11,12,13,14,15
  132:16,17,22,23,23
  133:1,2,3

_____
U

Uh-huh 107:12
ultimately 135:11
unauthorized 103:2
  104:1 108:21 109:9
under 95:19 128:23
  135:5,5
understand 108:12
  111:14 125:9,12,14
  125:15 126:11
UNITED 89:2 136:21
until 100:15 101:1,4
upside 93:11 94:23
use 102:19 114:7
used 91:13,20
Usual 92:7

_____
V

variance 108:16 112:15
  115:8 116:16 117:11
  117:12 118:2 126:1
various 95:2 124:19
versus 129:6,7
very 106:7 114:6 115:7
  115:7 119:20 131:23
VOLUME 89:13
  136:11
vs 89:8 136:17 138:5
  139:6

_____
W

wait 114:22
waived 91:19 92:3
  137:7
waiving 91:22
Wal-Mart 113:7
  132:10
want 92:19 111:11

  112:2 113:10
wanted 118:6 120:15
wanting 115:3
wasn't 98:20
way 103:4 112:5 119:7
  129:13,14,15,17
  130:1,2,5 131:11
week 94:16 96:6,7
  97:23 98:4,12 99:12
  99:18,20 100:2,8,9
  100:16,16,22 101:2,5
  101:7,23 104:3
  105:11,14,15,16
  106:2,7,10 107:4,5,9
  108:18,18 111:4
  112:8,8,9,9,9,11
  115:20,23,23 116:1,5
  116:5,6,7,10,14
  117:2,20 118:2,3,3
  118:10,12,15,17,21
  118:23 119:3,5 123:2
  124:1,20 125:16
  126:1,3,4,6,6,8,10,13
  126:13,23 128:5
  129:1,12 130:13,15
  132:8 134:5,5 135:8
  135:13,15,19
weekly 93:13 123:11
weeks 116:9,18,18,19
  116:20 117:1,7,9,17
  118:10,18,19 119:10
  119:10 121:16
  123:12
week's 114:9 128:14,19
  134:3
well 98:9 102:22 104:4
  109:11 114:2 118:22
  119:20 130:10
went 97:7 98:23 104:21
  114:17 130:17
  131:18
were 92:23 93:12 94:4
  98:4 100:4 103:7,9
  110:4 118:11 119:8,8
  119:21 120:18
  121:15 123:5 125:7
  132:15
we're 93:2 99:6,10,14
  101:11 102:2 103:20
  106:23 110:12 113:6
  113:8 114:1 115:19
  115:20 117:4 121:8
  133:16
we've 113:1,23,23
  120:4,9,10 122:22
  132:3
whammy 119:16
whatsoever 122:1
whole 92:14 99:17
  100:20 101:7,13

  108:13 112:1,10
  118:4 136:13
Winn-Dixie 103:8,9,11
  105:3,13,18 106:1
  114:17
witness 92:1,2,13
  117:14 137:5 138:2
wondering 111:19
word 99:8
work 94:17,18 95:23
  112:7
worked 111:17 132:21
working 104:20 111:13
  111:15
works 99:18 100:16
worth 104:1,23 105:12
  117:1 124:15 125:18
  126:5,7 130:16
wouldn't 103:14
  125:20
wrong 123:14 131:1

_____
Y

Yeah 109:15 118:21
yesterday 92:21,22
  93:12 94:8 97:7
  111:16 112:14
  120:14,15,18 125:2
  127:13
y'all 94:3

_____
Z

zero 114:22

_____
$

$1,058 125:18 130:14
$1,058.43 124:22 125:2
  129:18 130:8
$1,435.85 106:12 107:8
$1,742.69 105:11
$1058.43 130:16
$13,000 126:7
$14,000 126:4,5
$14,003 124:15
$14,003.64 122:23
  123:16
$151.85 95:15
$2,313.80 105:23 107:1
  107:7
$25 117:2,19,21
$5,724.81 135:8
$5,996.76 125:10 134:9
$54.42 103:21 104:1
$571.11 104:19,23
  105:6
$6,355 101:17
$63,430 120:19
$633.31 96:23
$74.76 107:17 114:12
  115:8

$8,000 99:22
$8,344.82 94:12
$8,668.81 97:17 101:18
  102:5
$8,723.23 102:11
$803 110:12
$854 107:20
$877.95 107:10

_____
0

05 100:5,6

_____
1

1,058.43 125:17
10-15 98:17
10-16-2005 104:12
10-22-05 104:13,13
10-29-05 104:13
1000 90:10 139:4
1058.43 130:22
12 119:10
1435.85 107:2
1435.88 106:16
15th 105:10
151.85 95:4
16 119:10
16th 100:5
17 89:21 137:2 138:9
  139:9
1742.69 105:21
1819 90:11 139:5

_____
2

2 120:17
2:05-CV-937-MEF
  89:8 137:1
2005 98:18 119:20
2007 89:21 111:5,6
  124:12 137:2,11
  138:9,18 139:1,9
205 89:20
2069 97:4 121:2 123:7
21st 89:20
22nd 100:6
24th 137:11
25 113:9,10 115:21
  117:4 139:1

_____
3

3 93:3
333.68 132:6
35203 90:11 139:5
36117 90:6

_____
4

40 132:18,20
42 103:20
43 103:20 118:21
44 118:23 119:5
45 90:20

Deposition of Michael Lord

Page 6

**48** 137:3

---
**5**

**5** 90:20
**52-week** 121:12
**571.11** 105:21

---
**6**

**633.31** 96:21
**667.38** 132:9 133:3
**69** 97:5
**6987** 90:5

---
**7**

**741.60** 133:6
**75** 113:8
**785.16** 96:1

---
**8**

**8,344.82** 97:14
**803.19** 107:17
**81** 102:4,5
**85** 106:17,18
**866.81** 102:3
**877.95** 107:2,3

---
**9**

**9:10** 89:22
**9:50** 135:23
**908** 93:18
**909** 93:21 102:9 114:12
**957.30** 97:12