IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **HENRY PORTERFIELD,** <br> Plaintiff <br> v. <br><br> **FLOWERS BAKING COMPANY OF OPELIKA, LLC, GRADY MESSER, CALVIN RHODES, STEVE BORDEAU,** <br> Defendants. | * <br> * <br> * <br> * <br> * Case No. 2:05-cv-937-F <br> * <br> * <br> * |

### PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STRIKE AFFIDAVITS OF CHARLES MORROW AND HENRY PORTERFIELD

COMES NOW Plaintiff Henry Porterfield, by and through counsel, and for response to Defendant Flowers Baking Co. of Opelika, LLC's ("Flowers") motion to strike the affidavits of Charles Morrow and Henry Porterfield, states as follows:

I. Porterfield's affidavit, submitted in response to defendant's motion for summary judgment, is not "sham affidavit," is consistent with his previous deposition testimony, and is therefore not due to be stricken.

Defendant argues that a mere discrepancy between a party's or witness's later affidavit and previous deposition testimony is sufficient for the exclusion of the affidavit on the Court's consideration of a summary judgment motion. This is not the law in any federal court.

The Eleventh Circuit discussed this at length in the case of Tippens v. Celotex

Corp., 805 F.2d 949 (11th Cir. 1986). Citing an earlier 1984 case (<u>Van T. Junkins and Associates v. U.S. Industries</u>, 736 F.2d 656 (11th Cir. 1984)), the Court noted the following regarding the contradiction between the affidavit and testimony of the President of Van T. Junkins and Associates:

> [He] "'...made crystal clear in three places in the deposition' that there was no condition attached to their agreement that He was required to purchase one of their buildings in order to be awarded a dealership...He later submitted an affidavit stating That he would be awarded the dealership only if he would purchase one of their buildings."

<u>Tippens</u> at 953. The Court termed this a "flat contradiction" when compared with his earlier deposition testimony and it was therefore stricken. <u>Id.</u>

Defendants, however, now wish to extend this measure to encompass even a minor perceived or fanciful discrepancy in Porterfield's affidavit, even when that alleged "discrepancy" explains earlier testimony. Specifically, Defendant objects to these supposedly contradictory passages:

> Q. "Give me some specifics about, you know, *what you spoke about with Raymond Price.*"
>
> A. "I discussed that I had lost a Sodexho account and I tried to get it back and I didn't. And they terminated the contract. That's basically all I could discuss with him."

[Deposition of Henry Porterfield, p. 42, lines 14-21 (emphasis added)]. Now, compare this deposition testimony with the following affidavit testimony:

> "I also spoke with this manager at Sodexho TSUM on at least three occasions and made every effort possible to try and convince her to allow me to resume my deliveries to Sodexho TSUM. She did tell me I could resume my deliveries and she also said she would begin receiving deliveries from another bread company at the

same time she was taking my deliveries from Flowers."

[Affidavit of Henry Porterfield, para. 11].

Obviously, one can see from the very context of these statements that the first (the deposition) *is a recounting of a conversation that had taken place between Plaintiff and a former employee, Raymond Price.* The second statement (the affidavit), having nothing to do with any conversation, and certainly not made in the context of any conversation, with Raymond Price, is a recounting, in detail, of how Plaintiff was initially granted permission to resume serving the Sodexho TSUM account. Simply because Plaintiff did not bother to explain to Raymond Price the exact details and verbatim conversation with the manager of the Sodexho TSUM account, does not belie his later more detailed explanation.

Yet this Court should note that Plaintiff explained this very details later in his deposition, but Defendants conveniently neglected to quote, in their motion to strike, the explanation that appears both in his deposition and in their own corporate documents:

> Q. "And then the document says: 'About that time, Henry said he talked to the lady at Troy State this morning, and she said he could come back and work her.'"
> A. "She did."
> Q. "Is that–who told you that?"
> A. "The lady at Sodexho..."
>
> Q. "Well, why did you go back down with the councilmen if you were already back in the account?"
> A. "I wasn't back in there one hundred percent."
> Q. "Pardon me?"
> A. "I wasn't back in there one hundred percent, but I was back in the account."
> Q. "What do you mean you weren't back in there one hundred percent?"
> A. "That means she had two bread companies working for her."
> Q. "Okay. She was going to compare your service with someone else?"

A. "No. She was going to buy from both."

[Deposition of Henry Porterfield, p. 300-302]. Clearly then, this affidavit testimony about the account at Sodexho TSUM is but an elaboration upon Plaintiff's earlier deposition testimony found at pages 300 through 302. It is not a contradiction. Furthermore, even though Plaintiff denies there is a discrepancy between his deposition testimony and his affidavit, even were such present, the distinction between contexts of conversations and statements can account for them. See Rollins v. Techsouth, 833 F.2d 1525, 1531 (11th Cir. 1987).

Defendant again employs a specious argument and again invents a "contradiction" when moving to strike paragraph 9 of Plaintiff's affidavit. As with the previous section noted above, this paragraph also mirrors and further elaborates upon Plaintiff's earlier deposition testimony that Defendant Flowers has neglected to mention to this Court.

Paragraph 9 of Plaintiff Porterfield's affidavit states as follows:

> "My delivery truck had busted a hose and would not run. It subsequently had to be towed away for repairs. I only had about 10 minutes to make the delivery by the time I realized the seriousness of the problem with my delivery truck and realized I could not repair it to make the delivery on time. No one I knew, and no other distributor delivering for Flowers, could have made it to my truck's location, unloaded the bread from my truck, loaded it onto another truck, and driven it to Sodexho TSUM in 10 minutes. It would have taken anyone at least 25 minutes just to reach me, so it was impossible for me–or anyone–to make a timely delivery of my bread to Sodexho TSUM on March 3, 2005 after my truck broke down. At the time my truck broke down, no other deliveryman would have been available to make this delivery. That is why the delivery of bread to Sodexho TSUM was not timely made on March 3, 2005."

Compare this quoted paragraph with the following deposition quotes missing from Defendant Flowers's motion to strike:

> Q. "When you, when your truck broke down, did you call anybody at Flowers and ask for assistance at the Sodexho account?"
> A. "It wouldn't have did any good when the truck broke down. Because it was a situation where you had about a thirty minute span from get [sic] the buns to get back to them, thirty to forty minutes. And when the truck broke down, it wouldn't have did any good. They couldn't have made it there on time..."
>
> Q. "As soon as the truck broke down, if you had called someone, could someone have come and picked up the buns and delivered them to the Sodexho account?"
> A. "No."
> Q. "Why not?"
> A. "By the time they got to me and got to Sodexho it still would have been too late."
> Q. "Why do you say that?"
> A. "Because it was–the time frame was something like about a ten minute difference from me getting there. And it would have took anybody at least twenty-five minutes to get to me."

[Deposition of Henry Porterfield, p. 296, lines 11-23; p. 297, lines 1-2] By comparing these excerpts, the Court will note that they are perfectly consistent, and that the affidavit merely explains, in greater detail, why another driver could not timely make the delivery to Sodexho TSUM after Plaintiff's delivery truck experienced a mechanical failure effectively stranding it on the side of the road.

Defendant Flowers next argues paragraph 9 of Porterfield's affidavit should be stricken by making the unsupported assertion that "...Plaintiff has no basis for assuming where other distributors might have been in reasonable proximity to his truck..." In fact, however, Plaintiff was never asked in his deposition if anyone was "...in reasonable proximity to his truck..." Plaintiff testified, as noted above, that "...it would have took [sic] at least twenty-five minutes for anybody to get to me..." yet Flowers never asked for Plaintiff's basis for making this statement of fact. Morever, they have never produced any

affidavit or evidence from any other deliveryman or woman stating he or she was available for the delivery, or that such a deliveryman or woman was "...in reasonable proximity..." to Plaintiff's truck. Plaintiff has stated, in his affidavit, that he has personal knowledge of the facts within his affidavit, and that includes his personal knowledge of how long it would have taken any deliveryman in his area to reach him and deliver this bread in a timely manner. The fact that Flowers did not bother to discover Plaintiff's basis for stating no one else was available for the delivery does not make Plaintiff's basis for making that statement false. It only serves to highlight Flowers' failure to ask a pertinent question.

To prevail on its motion to strike paragraphs 9 and 11 of Plaintiff's affidavit, Flowers must show that Plaintiff's sworn statements are a "...flat contradiction..." to his earlier deposition testimony. Any minor discrepancy, and certainly any elaboration and more detailed explanation of factual matters in an affidavit, does not rise to this level.

> "A definite distinction must be made between discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence. 'An opposing party's affidavit should be considered although it differs from or varies [from] his evidence as given by deposition or another affidavit and the two in conjunction may disclose an issue of credibility...."
>
> "To allow every failure of memory or variation in a witness's testimony to be disregarded as a sham would require far too much from lay witnesses and would deprive the trier of fact from the traditional opportunity to determine which point in time and which words the witness (in this case, the affiant) was stating the truth...."
>
> "An affidavit may only be disregarded as a sham 'when a party has given clear answers to unambiguous questions which negate the

> existence of any issue of material fact...[and that party attempts] thereafter [to] create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."

<u>Tippens</u> at 953-954. Moreover, Defendant Flowers cannot prevail on this motion to strike even if this Court has doubts about the credibility of Plaintiff's affidavit:

> "[E]very discrepancy contained in an affidavit does not justify a district court's refusal to give credence to such evidence... summary judgment was improper even though party's testimony was 'not a paradigm of cogency or persuasiveness,' since it was not a 'transparent sham'...In light of the jury's role in resolving questions of credibility, a district court should not reject the Content of an affidavit even if it is at odds with statements made in an earlier deposition."

<u>Id</u>. (Citing <u>Kennett-Murray Corp. v. Bone</u>, 622 F.2d 887, 894 (5th Cir. 1980)).

These elaborations and explanations in Plaintiff's affidavit are not "...inherently inconsistent..." with Plaintiff's deposition testimony, as required by the Eleventh Circuit in a finding of a sham affidavit. <u>Id</u>. Even determining that discrepancies "...affect his credibility..." or "...diminish its persuasiveness..." is not enough for a finding that an affidavit was a sham. <u>Tippens</u> at 954. Thus, paragraphs 9 and 11 of Plaintiff's affidavit should not be struck from Plaintiff's affidavit in this case.

II.   <u>Plaintiff's statements, regarding termination for failing to deliver frozen bread, the termination of his son from working as a deliveryman for Flowers, the increased profitability of his route, and improper accounting practices, are all admissible facts when this Court considers all the evidence before it on the pending motion for summary judgment</u>.

Defendant Flowers objects to the following statements within the noted paragraphs of Plaintiff Porterfield's affidavit:

> Paragraph 6: "I was not forced to deliver frozen goods by Flowers, but I was told to deliver frozen goods by management. If I did not and a customer did not receive its bread products, I knew Flowers would treat that as a breach of my Distributor's Agreement and use that as an excuse to terminate my contract. In that sense, I had to deliver frozen bread products even though I knew they were not fresh. I needed my job."
>
> Paragraph 12: "During the latter part of 2004, it became known that WalMart and Publix were both opening new grocery stores on my delivery route. This meant that the amount of deliveries on my route would greatly increase and my route would be dramatically more profitable. I personally know Flowers was aware of these two new stores."
>
> Paragraph 16: "On the same day I was barred from the warehouse, Marcus was also banned from the warehouse by Flowers and he was thus prevented from running my route. It was clear to me that Flowers was going to making it impossible for me to run my route."
>
> Paragraph 19: "Flowers is intentionally running my route in such a manner, and with such questionable and improper accounting practices, so as to ensure my route loses money, or at a minimum, to make it appear as though it is losing money through the use of false and improper accounting practices."

Flowers objects to these statements of Plaintiff as being speculative and because Porterfield allegedly lacked personal knowledge to make these statements. However, when considered in conjunction with the evidence before this Court, these statements are admissible.

First, this Court will consider "'...pleadings, depositions, answers to interrogatories, and admissions on file,...'" in addition to affidavits, in ruling on summary judgment. Macuba v. Deboer, 193 F.3d 1316, 1323 (11th Cir. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Reviewing these other evidentiary submissions renders

these statements admissible. Second, these statements are based on personal knowledge. Plaintiff will address each in numerical order:

    A. Paragraph 6:    Plaintiff's 2002 Distributor's Agreement, in evidence before this Court, specifically states he may be terminated for a breach of service. It is beyond dispute that failure to deliver bread to a customer constitutes a violation of his contract and may lead to a breach. In fact, that is precisely what happened with the Sodexho TSUM account: Plaintiff failed to deliver product and he was thus in breach of his contract when his customer, as a result of his failure to timely deliver product, refused to accept future deliveries from him. Deposition testimony, before this Court of the Plaintiff and of officers for Flowers, all admit that Flowers provides frozen bread for delivery to its restaurant customers. If Plaintiff refused to deliver this frozen product, even though it was in violation of the freshness requirements of his own contract, he would have had no product to deliver to his customers on occasion. This would lead to a breach and he could be terminated for a breach. Therefore, his statement in paragraph 6 of his affidavit is nothing more than a logical explanation of the obvious–he could be fired for failing to deliver product. His statement is thus not speculation, but fact.

    B. Paragraph 12:    The statement in paragraph 12 regarding Flower's knowledge of the Publix and WalMart stores being added to his route, and his route being consequently more profitable, is proven by witnesses for both Plaintiff and Flowers. Charles Morrow states in his affidavit that the director of sales for Flowers, Grady Messer, began having a "problem" with Plaintiff "...around the time we heard that Publix

and Walmart were going to be adding new locations to Henry's route..." Moreover, Flower's own documents and deposition testimony prove that Plaintiff's route doubled in sales and revenue after these stores were added to his route. Plaintiff states he has personal knowledge that Flowers knew about these stores being added to his route. There is nothing in the record before this Court to contradict this statement, and even if there were, it would simply constitute a question of material fact. Merely because Plaintiff does not identify which officer with Flowers had this knowledge does not render his statement inadmissible.

    C. Paragraph 16:    It is undisputed that Flowers fired Plaintiff's son, Marcus Porterfield, on the same day it banned Plaintiff from entering into the warehouse to collect product, thus effectively prohibiting Plaintiff from personally running his delivery route. On this same day, Flowers fabricated a story alleging Plaintiff had threatened a management employee of Flowers. Marcus Porterfield had, by Flower's own admission, been "...one of the best..." [Plaintiff's affidavit, para. 15] employees the company had, yet the company suddenly fired him when Marcus filmed evidence of the fact that Flowers was violating its own contract with Plaintiff when it provided out of code and frozen bread, as opposed to fresh baked bread, for delivery to customers. Given these actions, Flowers had indeed "...made it impossible..." for Plaintiff to deliver his product to customers of Flowers. Plaintiff thus contends that this statement is a statement of fact, not opinion.

    D. Paragraph 19:    Plaintiff's statements, in paragraph 19 of his affidavit are

indeed admissible statements of fact. In sum, he makes the following statements of fact: (1) that he made a profit when he ran his route; (2) deliveries on his route have increased since Flowers terminated him and began running his route; (3) the volume of product has increased on his route since WalMart and Publix opened their stores; (4) Flowers has utilized questionable accounting practices, and (5) Flowers accounting makes it appear that the route lost money even though the volume of deliveries had dramatically increased.

Addressing these statements individually, there is little cause for argument on most. It is a fact that Plaintiff made a profit when running his route. Obviously, this is something Plaintiff would have personal knowledge of as it was his route.

Deliveries have indeed increased since Plaintiff was terminated and Flowers began servicing his route and the volume of product on his route delivered has increased. The Comptroller of Flowers, Jerry Woodham, testified that W2s for Porterfield increased from $46,468.57 in 2005 (the year Porterfield was terminated) to $74,499.75 in 2006. [Woodham deposition, pages 91-98]. The laws of mathematics compel all parties herein, even Flowers, to concede that this constitutes a mathematical "fact" and that the factual difference between the two figures amounts to an mathematical "increase." Moreover, the total product charged to Porterfield's account increased from $346,986.95 in 2005 to $600,245.39 in 2006. Again, this is a fact, and it is a fact of which Plaintiff has personal knowledge.

Plaintiff states Flowers had knowledge of the opening of the Publix and WalMart

stores on his route. While he does not identify precisely who at Flowers had this knowledge, he states, of his own personal knowledge, that the company had this knowledge. This fact is supported by the affidavit of Charles Morrow who stated Plaintiff's problems with Flowers began when word of the new stores became known and that Flowers's employee, Grady Messer, then stated he was going to find a way to take Porterfield's route from him. These latter facts are admissions by a party against that party's interest, and are admissible. When considered in conjunction with the accounting testimony, these statements of Morrow act to render Plaintiff's factual statements admissible.

Finally, with regard to Plaintiff's affidavit, it is a fact that questionable accounting practices were used in this case. It may be a disputed fact, but it is a fact nonetheless. As noted above, Plaintiff's route, according to Flowers' own witness testimony, had dramatically increased in volume. That is a fact. Furthermore, it is a fact that Flowers, even with this increase in volume and sales, showed Porterfield's account had decreased in value. In other words, its sales went from $346,986.95 in 2005 to $600,245.39 in 2006, but its value decreased. Both Woodham (the comptroller) and Michael Lord (the vice president) attempted to explain the figures appearing on the weekly distributor summary reports for Plaintiff's account. Neither could explain the figures, and neither could explain why the figures on the reports would not balance. (Woodham deposition, pages 102-122; Lord deposition, pages 92-104). Also, for all this income, Porterfield never received any money from Flowers in 2005 or 2006, even though the company showed

receipts of hundreds of thousands of dollars, and worse still, Flowers charged Porterfield for "shrinkage," completely without authority anywhere in the contract. Taken together, Porterfield certainly can state–as a fact–that Defendant's accounting practices have made it appear as though he is losing money and that those practices are questionable. Given the discrepancies, it is a fact that the accounting practices are questionable, if not arguably deceitful. It may be a disputed fact, but with the evidence before this Court, it is certainly capable of being termed a fact.

III.   The affidavit of Charles Morrow is admissible.

Federal law holds that this Court may consider testimony on a motion for summary judgment, even though the testimony may be in an inadmissible form, if it can be later made admissible at the trial.

> "Some courts, including our own...hold that a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be 'reduced to admissible evidence at trial,' or 'reduced to admissible form.'"

Macuba v. Deboer, 193 F.3d 1316, 1323 (11th Cir. 1999). A witness's statement will be accepted into evidence if it can be determined to be "...admissible at trial for some purpose," and, with regard to hearsay contained within a witness' affidavit, the hearsay will be accepted as evidence if those hearsay statements "...would be admissible at trial were [the witness] to take the stand and [the plaintiff] sought to elicit those statements from him." Id. (quoting footnote 120).

Herein, Flowers objects to these statements of Grady Messer, as testified to by

Charles Morrow:

> "I have heard Grady Messer state that he was going to find a way to get Henry terminated and get his route back."

> "I also know Grady was angry about Henry complaining over Flowers making us deliver out of date product to our accounts. He said to stop complaining or he [Plaintiff] would regret it or words like that."

[Affidavit of Charles Morrow, para. 4].

Grady Messer is Director of Sales for Flowers. [Messer deposition, p. 5]. He has held this position for sixteen (16) years. He reports directly to Michael Lord, the Vice President of Flowers. [Messer deposition, p. 17]. Messer met with Porterfield, Porterfield's brother, and with the Vice President (Michael Lord) to discuss the Sodexho TSUM account problem that immediately preceded Porterfield's termination. [Messer deposition, p. 59, lines 1–19]. Messer met with Lord concerning the decision to terminate Porterfield. [Messer deposition, p. 53, lines 18–7]. Messer testified "We gave him [Porterfield] the [10 day] breach letter,' and that he sent the letter. [Porterfield deposition, p. 54, lines 11–14]. Messer fabricated a story alleging Henry threatened him and communicated this fabricated story to Lord in an email as well as by telephone. [Porterfield deposition, p. 308, lines 1–10; Lord deposition, p. 29, lines 9–20].]. As a result of Messer's fabrication, Lord barred Porterfield from the warehouse, thus prohibiting Porterfield from personally running his route. [Lord deposition, page 30, lines 6–23].

Defendant does not believe Morrow's recounting of Messer's statements is

admissible because it is hearsay, because Morrow is allegedly an independent contractor rather than an employee, and because Messer "...was not the decisionmaker regarding the termination of Plaintiff's contract." Not all of these allegations are true, and the statement is admissible for other reasons.

First, Messer is an agent of Flowers. He is a management employee and has been one for sixteen (16) years. Second, Morrow is an employee of Flowers. Morrow does not state he was an independent contractor at the time of this incident. In fact, it is a matter of public record that Morrow has a case presently pending in this federal court alleging that he is a de facto employee of Flowers, that the classification of Flowers deliverymen as "independent contractors" is a sham designed to circumvent federal wage and hour laws, and that Flowers is in violation of federal wage and hour laws in inadequately compensating him. (See Morrow v. Flowers Foods, Inc., Middle District of Alabama case number 3:07-cv-617).

As recounted above, there can be little doubt but that Messer was very involved in the process that led to Porterfield's termination. That fact is enough to permit the use of his statements as testified to by Morrow. In a similar case involving the use of statements recounted in another person's affidavit, the Eleventh Circuit examined the role and involvement of the person who made the statement

> "Even if the two executives did not play a role in the plaintiff's termination, their statements were admissible under Rule 801(d)(2)(D) because 'significant involvement, *either as advisor or other participant in a process leading to a challenged decision*' may be sufficient to establish agency under

Rule 801(d)(2)(D).

Rowell v. Bellsouth, 433 F.3d 794, 800 (11th Cir. 2005) (emphasis added). These statements may thus be accepted as an admission against an adverse party or as a statement against interest, and they are further admissible on the issue of agency.

Furthermore, these statements are admissible to show intent and motive on the part of Messer and Defendant Flowers. These statements act to reveal the design of Flowers to convert a route to its own use that had grown far more profitable and doubled in sales volume with the addition of new stores on the route. These statements further evidence Flower's intention to terminate Porterfield because he complained about frozen bread, and the issue of three month old frozen bread being "fresh" is a deceit admitted to by all officers of Flowers deposed herein. Finally, all of these statements are not necessarily offered for the truth of the matter asserted (i.e., whether Flowers was going to find a way to fire Porterfield, or whether there would be regrets if complaints continued about frozen bread deliveries); rather, these statements are offered to show the intentions of Flowers, its scheme, intent and design to recover a profitable route, and a desire, design, and pattern of behavior orchestrated to conceal its fraudulent practices with regard to frozen product being fraudulently marketed as fresh product. The statements are further admissible to establish Flowers breached its contract with Plaintiff and that its stated reason for terminating him was a pretext or sham designed to conceal its actual intentions and actions.

Finally, with regard to Morrow's statement in paragraph 3 of his affidavit, namely

that "Flowers did not help him [Porterfield]. In fact, Flowers worked to make sure he would not cure his breach," this statement is admissible. Again, considering the evidence before this Court from other sources, this is a statement of fact supported by independent facts herein. The fact that Flowers disputes it by stating Steve Stephens "...attempted to help Plaintiff get back in the account" completely ignores the actions Flowers intentionally undertook to ensure Porterfield would not regain the account (fabricating a story to remove him from the warehouse and forbidding his son from assuming the route). Steve Stephen's declaration only serves to prove that there is a material issue of fact on this issue.

WHEREFORE, premises considered, Plaintiff prays this Honorable Court will deny Defendant's Motions to Strike the Affidavits of Henry Porterfield and Charles Morrow.

Respectfully submitted this the 24th day of August, 2007.

/s/ Dan W. Taliaferro
Dan W. Taliaferro
Gregory L. Davis
Attorneys for Plaintiff

Greg L. Davis, Esq
Dan W. Taliaferro, Esq.
6987 Halcyon Park Drive
Montgomery, AL 36117

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I have served a copy of the foregoing

document by U. S. Mail, first class postage prepaid and properly addressed, on the 24th day of August, 2007, to the following:

    Kevin P. Hishta, Esq.
    OGLETREE, DEAKINS, NASH SMOAK & STEWART
    Bank of America Plaza
    600 Peachtree Street, N.E.
    Suite 2100
    Atlanta, GA 30308

    Sandra B. Reiss, Esq.
    OGLETREE, DEAKINS, NASH SMOAK & STEWART
    One Federal Place, Suite 1000
    1819 Fifth Avenue North
    Birmingham, AL 35203-2118

_/s/ Dan W. Taliaferro_
Dan W. Taliaferro