UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **HENRY G. PORTERFIELD,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **CASE NO: 2:05-cv-937-MEF** |
| ) | |
| ) | |
| **FLOWERS BAKING CO. OF** ) | |
| **OPELIKA, LLC,** ) | |
| ) | |
| **Defendant.** ) | |

### ORDER ON PRETRIAL HEARING

A pretrial hearing was held in this case on January 31, 2008, wherein the following proceedings were held and actions taken:

1. <u>PARTIES AND TRIAL COUNSEL</u>:

    Plaintiff:  Greg L. Davis and Dan W. Taliaferro

    Defendant:  Sandra B. Reiss and Kevin P. Hishta

    <u>COUNSEL APPEARING AT PRETRIAL HEARING</u>:  <u>Same as trial counsel</u>.

2. <u>JURISDICTION AND VENUE</u>:  Subject matter jurisdiction exists on the basis of diversity of citizenship, 28 U.S.C. § 1332.  Personal jurisdiction and venue are not contested.

3. <u>PLEADINGS</u>:  The following pleadings and amendments were allowed:  Complaint on behalf of Plaintiff;

    Answer on behalf of Defendant.

4.      CONTENTIONS OF THE PARTIES:

(a)     The plaintiff(s)

      (i)     1.      Defendant Flowers breached its distributorship by wrongfully terminating him and wrongfully removing him from operating his bread delivery route.

      2.      Henry Porterfield distributed Flowers' "products" within his geographic territory which included Ann Street and Zelda Road in Montgomery, Alabama.

      3.      In 2004, both Publix Grocery Stores and Wal-Mart announced that they would be opening stores within Henry Porterfield's exclusive territory.

      4.      Henry Porterfield called on approximately twenty one (21) accounts within his exclusive territory. One of those accounts was Troy State Sodexho Marriott.

      5.      Sodexho Marriott handled the cafeteria at the Troy State Montgomery campus and regularly purchased Flowers products to use in the cafeteria.

      6.      On or about March 3, 2005 the contact person at the Troy State Sodexho Marriott account contacted Henry Porterfield and stated that she needed him to deliver to her some additional buns because she was running out of product. Henry agreed to deliver the product, however, on his way to make the delivery; his truck began to experience mechanical problems and broke down. Henry was unable to make the delivery. No one else was available to make the delivery. As a result the manager at the Troy State Sodexho Marriott account became angry and called a competitor to purchase the product she needed. She

also advised Henry that she no longer wanted him to service her account and that she was going to purchase all of her products from one of Flowers' competitors. Henry in turn notified Flowers and explained to them what had happened.

7. On March 7, 2007, Henry received a letter from Flowers informing him that he was in violation of his distributorship agreement and that he had ten (10) days to "cure" his alleged failure of performance.

8. Henry did everything that he could, and used his best efforts as called for in his Distributor's Agreement, to try to regain the Sodexho Marriott account

9. Henry was initially unsuccessful in his attempts to convince the account manager at Sodexho, and enlisted the help of Montgomery County Commissioner, Jiles Williams, and a Montgomery City Councilman, James Knuckles, to try and get the Sodexho Marriott account back.

10. Henry was unsuccessful in convincing the account manager at Sedexho to let him call on the account.

11. Flowers thereafter determined that Henry had not cured his breach and terminated his distributorship's agreement.

12. Flowers took Henry Porterfield's distributorship and began to run the route and charge Henry for running it.

13. It is undisputed that the only reason Henry Porterfield's contract was terminated was because the Troy State Sodexho Marriott account decided not to buy their bakery products from Flowers.

14. It is Plaintiff's position that Flowers Baking of Opelika was in breach of the distributor agreement.

15. Flowers has continued to operate Henry Porterfield's exclusive territory since his contract was terminated in March 2005 and it charges his account for operational expenses.

16. Weekly distributor reports show that Henry Porterfield's route has almost doubled in product ordered since Flowers has been running his account, largely in part due to the fact that both Wal-Mart and Publix have opened locations within Henry's exclusive territory.

17. Flowers was charging Henry for two trucks on the account, and they were using two people to run the route.

18. Flowers prohibited Porterfield from curing the Sodexho TSUM breach by not permitting him to run his delivery route.

19. Taking Plaintiff's route from his personal control, prohibiting Plaintiff from running his route, prohibiting Plaintiff from entering onto company property and banning him from the warehouse, all constitute "interference" with Plaintiff's property.

20. Defendant has used questionable and unauthorized accounting practices to suppress the true value of Plaintiff's route.

21. Defendant has used questionable and unauthorized accounting practices and has excessively charged Plaintiff's route in an effort to avoid paying Plaintiff any of the revenue generated by the route.

    22. Plaintiff is entitled to the value of his exclusive rights territory that he purchased from Flowers.

    24. Plaintiff is entitled to the income which his route has produced since it was wrongfully taken from him.

    25. Defendants have charged Plaintiff with numerous unnecessary and unauthorized charges in violation of his distributorship agreement.

(b) The defendant(s)

    (i) Dismissed Claims –On December 12, 2007, this Honorable Court entered its Memorandum Opinion and Order on Defendant's Motion for Summary Judgment. In its Opinion, the Court held that Plaintiff had conceded his claim for fraud in his Brief in Opposition to Summary Judgment. The Court also held that Plaintiff had conceded that damages for mental anguish and emotional distress were unrecoverable under his breach of contract claim. The Court dismissed Plaintiff's contract and tort claims for "out of code" product, and Plaintiff's tort claims with respect to alleged wrongful termination and "questionable accounting." Accordingly, the sole remaining claim is Plaintiff's breach of contract claim with respect to the termination of his Distributor Agreement.

    (ii) Alleged Breach of Contract

      a. Plaintiff's breach of contract claim regarding the termination of his Distributor Agreement is barred because the facts demonstrate that he did not use his "best efforts" to develop and maximize sales and service

his territory in accordance with good industry practice. Specifically, on March 3, 2005, Plaintiff failed to bring hamburger buns to his Sodexho account located at Troy University. Sodexho is a large, multi-location customer. While Plaintiff promised Sodexho he would return that day with buns, he never did. Plaintiff attempts to excuse his service failure on his truck allegedly breaking down. Plaintiff admits, however, that he made no effort whatsoever to call the account back, request assistance from Flowers, another distributor, or anyone else to service the account despite having his cell phone with him at the time. By his own repeated admissions, Plaintiff was only concerned about his truck, not his customer. At bare minimum, Plaintiff should have at least called his customer. This is particularly true given Plaintiff's history of service issues, including with Sodexho where he had already been given a "second chance."

      b.      Following Flowers' unsuccessful attempt to get Plaintiff back into the Sodexho account, Plaintiff was issued, in accordance with the Distributor Agreement, a ten (10) day curable breach letter. He was given two options, resume service or make alternative arrangements for service of the account.

      c.      Plaintiff did neither. While he claims he was able to resume partial service to the account, the evidence demonstrates otherwise. Both of his witnesses to the meeting with the representative from Sodexho submitted affidavits indicating that he was not back in the account at all. As stated by Councilman Knuckles, "When we left the cafeteria, it became clear to us that she was not budging on her decision to stop Flowers from servicing their account." (Pl. Ex. 4, Affidavit of James Knuckles, ¶ 6.) Plaintiff's minister stated, "She was

6

not budging on her decision to stop Flowers from servicing their account and to change to one of Flowers' competitors." (Pl. Ex. 6, Affidavit of Jiles Williams, Jr., ¶ 6) As such, Plaintiff's own first-hand witnesses do not state that Plaintiff was somehow partially in the account, but clearly maintain that Plaintiff was out of the Sodexho account, and the customer was not going to change her mind.

        d.        Further, there is no dispute that Plaintiff made absolutely no arrangements for someone to run his route after he was barred from the premises, although he states that would not be a problem, now, two years after the fact, when he can no longer run a route at all due to his receipt of Social Security. (Pl. Dep., p. 371, lines 3-9, Tab B.) As such, his argument regarding the fact that his son Marcus was banned from the premises for videotaping is simply a red herring on this issue given the fact that Plaintiff is confident he could find someone to run his route two years removed from the business, that it is common for Flowers' distributors to hire helpers, and that Plaintiff himself on two prior occasions used other distributors to rectify breaches after being kicked out of other accounts.

(iii)    Additional Contentions

        a.        Plaintiff's claim for punitive damages is not actionable because this is now solely a breach of contract case.

        b.        In accordance with Section 16.4 of the Distributor Agreement, Defendant has operated Plaintiff's distributorship for his account and deducted reasonable expenses in connection therewith.

    c.    Defendant should be awarded its legal fees and expenses associated with this litigation consistent with the language of the 2002 Distributor Agreement.

5.    <u>STIPULATIONS BY AND BETWEEN THE PARTIES</u>:

    a.    Defendant bakes and/or distributes various baked goods throughout west Georgia and central and south Alabama.

    b.    Defendant distributes such bakery products primarily through a direct-store-delivery ("DSD") system, *i.e.,* directly to retail accounts such as grocery stores, restaurants, and fast food businesses. This DSD system is comprised principally of a network of deliverymen described by Defendant as independent distributors.

    c.    Defendant's brands include Nature's Own, Cobblestone Mill, and BlueBird. Defendant, through its deliverymen, also distributes non-Flowers' brands to fast food and other restaurant accounts such as Burger King, Sonic, Krystal, Outback, and Chick-Fil-A.

    d.    Prior to becoming what Defendant terms an independent distributor for Flowers, Plaintiff was a Flowers employee, working as a route salesperson.

    e.    Steve Bordeaux, Flowers' current President, hired Plaintiff.

    f.    In 1994, Defendant changed its method of distribution and began selling distribution rights, to what Defendant termed independent distributors, in a defined geographical area.

    g.     In 1994, Plaintiff executed his first Distributor's Agreement with Defendant, pursuant to which he became what Flowers describes as an independent distributor.

    h.     Thereafter, Plaintiff executed two additional Distributor's Agreements with Defendant, one in 2000 and another in 2002.

    i.     Maintaining an adequate and fresh supply of products in retail stores is good industry practice, as is properly removing all stale products from his accounts and maintaining proper service and delivery to all of the accounts requesting service.

It is ORDERED that:

(1) The jury selection and trial of this cause, which is to last three (3) days, are set for March 3, 2008, at 10:00 a.m. at the United States Courthouse in Montgomery, Alabama;

(2) A trial docket will be mailed to counsel for each party approximately three weeks prior to the start of the trial term;

(3) The parties are to file their pre-trial briefs, if any, by February 25, 2008;

(4) The parties in this case are required to file proposed jury instructions and proposed verdict forms by February 25, 2008;

(5) Each party shall have available at the time of trial, for use by the court (the judge, the courtroom deputy clerk, and the law clerk), three copies of the exhibit list and a sufficient number of copies of each photostatically reproducible exhibit for opposing counsel, the courtroom deputy clerk, the law clerk, and the judge to each have a set of the exhibits;

(6)   All deadlines not otherwise effected by this order will remain as set forth in the Amended Scheduling Order (Doc. #66) entered by the court on October 16, 2007;

(7)   All understandings, agreements, deadlines, and stipulations contained in this Pretrial Order shall be binding on all parties unless this Order be hereafter modified by Order of the Court.

DONE this 31st day of January, 2008.

                    /s/ Mark E. Fuller
            CHIEF UNITED STATES DISTRICT JUDGE